COURT OF APPEALS OF VIRGINIA


Present:   Judges Frank, Petty and Senior Judge Willis
Argued at Richmond, Virginia


KENNETH RAY PALMER

                                                          OPINION BY
v.        Record No. 0542-05-3                    JUDGE JERE M.H. WILLIS, JR.
                                                          AUGUST 1, 2006
COMMONWEALTH OF VIRGINIA


            FROM THE CIRCUIT COURT OF THE CITY OF DANVILLE
                          Joseph W. Milam, Jr., Judge

            Mark T. Williams (Williams, Morrison, Light and Moreau, on brief),
            for appellant.

            Leah A. Darron, Senior Assistant Attorney General (Robert F.
            McDonnell, Attorney General, on brief), for appellee.


        On appeal from his conviction for possessing a firearm after having been convicted of a

felony, Kenneth Ray Palmer contends "the trial court erred in finding that [his] North Carolina

probation officer was not a person charged by the Commonwealth with the responsibility for

defining his permissible conduct with respect to Virginia Code § 18.2-308.2." We agree. We

reverse the judgment of the trial court and remand the case for further proceedings, if the

Commonwealth be so advised.

                                      BACKGROUND

        "On appeal, 'we review the evidence in the light most favorable to the Commonwealth,

granting to it all reasonable inferences fairly deducible therefrom.'" Archer v. Commonwealth,

26 Va. App. 1, 11, 492 S.E.2d 826, 831 (1997) (quoting Martin v. Commonwealth, 4 Va. App.

438, 443, 358 S.E.2d 415, 418 (1987)).

On August 8, 2004, Officer Rigney went to 62 Fairfield Avenue in Danville to investigate a shooting. There, Palmer told Rigney, "that he was taking his handgun out of the dresser drawer and he was going to move it to a different location in the residence and when he took it out of the drawer it discharged and shot him in the foot." Palmer told Rigney "it was a .380 caliber automatic pistol." Searching a totebag inside Palmer's bedroom closet, Rigney recovered "a Bryco Arms .380 Caliber handgun."

At trial, the Commonwealth introduced a juvenile adjudication from the Danville Juvenile and Domestic Relations District Court ("juvenile court") dated February 4, 1999, convicting Palmer of breaking and entering. Palmer was sentenced to serve sixty days in a detention home with thirty days suspended. The juvenile court ordered Palmer to attend substance abuse treatment, obtain a GED, and submit reports to the juvenile court every sixty days. It also ordered Palmer to be of "good behavior and not violate any laws for 12 months." The order did not place Palmer on supervised probation.

Danville Probation Officer Craig Saunders testified that Palmer "came through our Court on some charges [and] was placed on probation and we transferred supervision to the state of North Carolina." Saunders recalled giving Palmer "probation rules for the charges not related to the felony," and testified that the transfer to North Carolina was not in reference to the breaking and entering adjudication, but "was on other charges."

Danville Probation Officer Mick Crews testified that Palmer "moved to North Carolina, so we did interstate transfer." Crews recalled that Palmer "was placed on probation by the [juvenile] Court on May the 7th, 1998," almost six months before the breaking and entering and nine months before the juvenile court adjudication of February 4, 1999. According to Crews, Palmer would not have had a probation officer for the felony breaking and entering adjudication.

Palmer testified that he met with a probation officer in North Carolina and discussed his breaking and entering conviction. He could not remember the probation officer's name. Palmer testified as follows:

> I asked [him] specifically [about guns] because we had, I mean, it was guns everywhere in the house. Like I said, my stepfather was a hunter, a private gun owner, and that was one of the specific topics that me and my parents asked him, and you know, like I said, they said when I turned twenty-one that everything that - - you know, a juvenile record is a juvenile record, you know, and when you turn twenty-one it's supposed to be erased. That's what the guy - - the probation officer told me.

At the time he shot himself, Palmer was twenty-two years of age. He testified that he believed he could lawfully possess a firearm at that time.

On cross-examination, Palmer testified that his attorney for the 1999 trial in juvenile court told him that the breaking and entering "was dropped down to a lesser charge." The juvenile court records refer to breaking and entering only and do not indicate conviction of a lesser offense.

Palmer admitted he did not consult with a Virginia probation officer or attorney after arriving in Virginia with a firearm.

The trial court reviewed our decision in Miller v. Commonwealth, 25 Va. App. 727, 737, 492 S.E.2d 482, 487 (1997), and found the facts in that case distinguishable from Palmer's situation. It declined to "accept the notion that Virginia is bound by what a North Carolina probation officer may say." Accordingly, it rejected Palmer's due process defense, holding that Palmer had failed to carry his burden of establishing an affirmative defense. It made no finding as to the identity and status of the person in North Carolina of whom Palmer inquired, of what, if anything, Palmer was told by that person, or of the reasonableness of Palmer's reliance on that advice.

Our inquiry in this case is whether a North Carolina probation officer may be an officer upon whose advice, depending on its substance and circumstances, a person under his supervision may rely sufficiently to satisfy the conditions of Miller.

LEGAL AUTHORITY

Code § 18.2-308.2 prohibits "any person under the age of 29 who was adjudicated delinquent as a juvenile 14 years of age or older at the time of the offense of a delinquent act which would be a felony if committed by an adult . . . to knowingly and intentionally possess or transport any firearm."

In Miller, we recognized a due process defense available to a defendant who is on trial "for reasonably and in good faith doing that which he was told he could do," Miller, 25 Va. App. at 737, 492 S.E.2d at 487, by "a public officer or body charged by law with responsibility for defining permissible conduct with respect to the offense at issue," id. at 739, 492 S.E.2d at 489. Miller, a convicted felon, testified that he asked representatives of the federal government (ATF), officers of the Virginia Department of Game and Inland Fisheries (VDGIF), and his Virginia probation officer whether he could lawfully possess a muzzle-loading rifle for hunting. Id. at 730, 492 S.E.2d at 484. All advised him he could possess and use such a rifle. Id.

"The trial court believed Miller's testimony concerning the content of the information he received but concluded that the sources of Miller's information were not sufficient to preclude his conviction on due process grounds." Id. at 731, 492 S.E.2d at 484.

On appellate review, we explained that the defense is "'a narrow exception to the general principle that ignorance of the law is no defense,'" id. at 741, 492 S.E.2d at 489 (quoting United States v. Etheridge, 932 F.2d 318, 321 (4th Cir. 1991)), and is grounded on the premise that "convicting an individual who has reasonably relied on the advice of a state actor is so fundamentally unfair as to raise due process concerns." Id. at 739, 492 S.E.2d at 488. In raising

such a defense, "[t]he defendant bears the burden of establishing the affirmative defense," and of establishing "as a threshold matter, the legal sufficiency of the content and source of the information received." Id. at 736, 737, 492 S.E.2d 487, 488. "The application of the defense then requires a factual determination whether the defendant's reliance upon the information received was reasonable and in good faith." Id. at 737, 492 S.E.2d at 487-88.

> Of course, the reasonableness of a defendant's reliance is inextricably linked to the content of the information received and its source. See, e.g., [United States v.] Howell, 37 F.3d [1197,] 1204 [(7th Cir. 1994)] (Reliance must be reasonable "in light of the identity of the agent, the point of law represented, and the substance of the misrepresentation."). Ultimately, however, "reasonableness" can be determined only after a finding that the content and source of the information are legally sufficient to invoke due process concerns.

Id. at 737 n.5, 492 S.E.2d at 488 n.5.

We held "that the sources upon which [Miller] relied – a federal ATF agent, a VDGIF agent, and his probation officer – were 'state actors.'" Id. at 742, 492 S.E.2d at 490. However, with respect to the ATF and VDGIF agents, "Miller's case fail[ed] as a matter of law," because "[n]either of those agents was charged by law with responsibility for defining permissible conduct under Code § 18.2-308.2." Id.

As to Miller's probation officer, we disagreed with the trial court and explained that his probation officer "was charged by the Commonwealth with responsibility for defining Miller's permissible conduct with respect to Code § 18.2-308.2." Id. at 743, 492 S.E.2d at 491 (citing Code § 53.1-145). We reversed Miller's conviction, holding that "Miller's probation officer was . . . a source legally sufficient to invoke the Due Process Clause as a bar to his prosecution and conviction," and his "reliance on the advice of his probation officer was reasonable and in good faith." Id. at 745, 492 S.E.2d at 491. We contrasted Miller's situation to those cases involving "a defendant who seeks to invoke the defense as a bar to prosecution by one sovereign for advice

received from an official of another sovereign," and noted that "[t]he defense has been nearly universally rejected in this dual-sovereign context." Id. at 740, 492 S.E.2d at 489.

To successfully assert the due process defense discussed in Miller, a defendant must prove three elements:

> (1) that he was assured that the conduct giving rise to the conviction was lawful; (2) that the assurance was given by a "government official," i.e., "a public officer or body charged by law with responsibility for defining the permissible conduct with respect to the offense at issue"; and (3) that, based on the totality of the circumstances, reliance upon the advice was reasonable and in good faith.

Branch v. Commonwealth, 42 Va. App. 665, 671, 593 S.E.2d 835, 837 (2004) (quoting Miller, 25 Va. App. at 738-39, 492 S.E.2d at 488-89, 491).

ANALYSIS

Code § 16.1-295 prescribes the procedure for transferring supervision of a juvenile from a Virginia city or county to another state and provides:

> The Director of the Department of Juvenile Justice may make provisions for the transfer of a juvenile placed on probation in this Commonwealth to another state to be there placed on probation under the terms of Article 4 (§ 53.1-166 et seq.) of Chapter 4 of Title 53.1 [the Uniform Act for Out-of-State Parolee Supervision].

Code § 53.1-166 authorizes the governor to enter into prescribed supervisory compacts with other states. Code § 16.1-323 sets forth the provisions of the "Interstate Compact Relating to Juveniles" which the Governor of Virginia executed and entered into with the fifty states and the District of Columbia, including North Carolina, see N.C. Gen. Stat. §§ 7B-2800 – 7B-2827 (2005) (containing the provisions for their interstate compact). Article I of Virginia's compact provides, in pertinent part:

> The cooperation of the states party to this compact is therefore necessary to provide for the welfare and protection of juveniles . . . with respect to (1) cooperative supervision of delinquent juveniles on probation or parole . . . . In carrying out the provisions of this

- 6 -

> compact the party states shall be guided by the . . . policies which guide their laws concerning delinquent, neglected or dependant juveniles generally. . . .  The provisions of this compact shall be reasonably and liberally construed . . . .

Code § 16.1-323.

Article VII(b) directs "each receiving state" to "assume the duties of . . . supervision over any such delinquent juvenile and in the exercise of those duties will be governed by the same standards of . . . supervision that prevail for its own delinquent juveniles released on probation or parole."  Id.

The trial court recognized "that probation had been transferred," however, it refused to "accept the notion that Virginia is bound by what a North Carolina probation officer may say." In other words, it concluded that a North Carolina probation officer to whom Palmer's case had been transferred "was not a source legally sufficient to invoke the Due Process Clause as a bar to his prosecution and conviction" in Virginia.  Miller, 25 Va. App. at 745, 492 S.E.2d at 491.  It reasoned that firearm laws in North Carolina are "much more liberal in allowing individuals who've committed or [been] adjudicated of certain crimes to possess firearms, particularly in their homes.  Virginia's laws are materially different in that regard."

The trial court tied its ruling not to an analysis of the substance or reasonableness of the advice given Palmer, but to the legal authority of a North Carolina probation officer to give such advice.  The interstate compact foreclosed that holding.  It constituted the North Carolina officer an adjunct officer of the Virginia probation system.  Thus, under Miller, Palmer was authorized to seek advice from his supervising North Carolina probation officer.  Accordingly, we reverse the judgment of the trial court and remand for further proceedings consistent with this opinion if the Commonwealth be so advised.  If on remand Palmer again asserts the due process defense, the trial court shall make the threshold determination that a North Carolina probation officer may be a person charged by the Commonwealth with defining appellant's conduct.  It shall then

consider the tendered proofs of the identity and status of the person from whom Palmer contends he sought advice and the substance of any advice given, and shall determine whether Palmer's alleged reliance on that advice was reasonable and satisfied the conditions set forth in <u>Miller</u>. <u>See</u> <u>Branch</u>, 42 Va. App. at 671, 593 S.E.2d at 837.

<u>Reversed and remanded.</u>