COURT OF APPEALS OF VIRGINIA

**PUBLISHED**

Present:   Judges Petty, McCullough and Chafin
Argued at Salem, Virginia


TRACY WAYNE CLAYTOR

                                                          OPINION BY
v.        Record No. 0309-13-3              JUDGE WILLIAM G. PETTY
                                                     DECEMBER 17, 2013

COMMONWEALTH OF VIRGINIA


FROM THE CIRCUIT COURT OF AUGUSTA COUNTY
Victor V. Ludwig, Judge

Donald G. Judy, Assistant Public Defender, for appellant.

Katherine Quinlan Adelfio, Assistant Attorney General (Kenneth T.
Cuccinelli, II, Attorney General; David M. Uberman, Assistant
Attorney General, on brief), for appellee.


Pursuant to Code § 19.2-254, Tracy Wayne Claytor entered a conditional plea of guilty to

an indictment charging him with operating a motor vehicle after having been declared an

habitual offender, in violation of Code § 46.2-357.  Under his conditional plea of guilty, Claytor

preserved the right to appeal the trial court's pre-trial ruling prohibiting him from introducing

evidence that he reasonably believed that he was no longer an habitual offender on the date of

the offense.  Claytor argues that the trial court erred because he was entitled to assert the

affirmative defense of good faith reliance, as recognized in Miller v. Commonwealth, 25

Va. App. 727, 492 S.E.2d 482 (1997), and because the evidence excluded was relevant to that

defense.  Specifically, Claytor argues that the wording of the September 21, 2011 order, which

restored his privilege to operate a motor vehicle on a restricted basis, caused him to reasonably

believe that he was no longer an habitual offender.  This reasonable belief, he further argues,

constituted a defense to the indictment of driving after having been declared an habitual

offender. For the following reasons, we disagree. Therefore, we affirm Claytor's conviction of operating a motor vehicle while an habitual offender.

## I. BACKGROUND

"On appeal, 'we review the evidence in the light most favorable to the Commonwealth, granting to it all reasonable inferences fairly deducible therefrom.'" Archer v. Commonwealth, 26 Va. App. 1, 11, 492 S.E.2d 826, 831 (1997) (quoting Martin v. Commonwealth, 4 Va. App. 438, 443, 358 S.E.2d 415, 418 (1987)).

The parties stipulated to the following facts. On May 13, 1991, Claytor was adjudicated as an habitual offender by order of the Waynesboro Circuit Court. Claytor was personally present when he was found to be an habitual offender and was ordered by the court not to operate a motor vehicle on the highways of the Commonwealth. On September 16, 2004, Claytor was convicted of driving after having been declared an habitual offender. On July 14, 2011, Claytor petitioned the court for restoration of driving privilege, and the petition included Claytor's statement: "I have been adjudged/determined to be an habitual offender . . . ."

On September 21, 2011, the Circuit Court of Augusta County issued the order, which included the following language:

> [I]t is hereby ORDERED that, pursuant to Section 46.2-360 of the Code of Virginia, TRACY WAYNE CLAYTOR, is hereby restored his privilege to operate a motor vehicle in the Commonwealth of Virginia on a restricted basis and under the conditions that he successfully complete the Valley Alcohol Safety Action Program and that he shall not operate a motor vehicle at any time after having consumed any alcohol or drugs, and that his restricted license require an ignition interlock system on any vehicle that he may drive, and the violation of these conditions would be a ground for vacating this Order and *Petitioner reverting to habitual offender status*.

(Emphasis added).

- 2 -

On October 21, Investigator Joey Good and Lieutenant A.C. Powers of the Augusta County Sheriff's Office saw a motorcycle approaching, which Investigator Good recognized as being Claytor's motorcycle. Investigator Good stopped his vehicle in the roadway, without activating the lights, and the motorcycle stopped and pulled up to Investigator Good. Claytor, who was operating the motorcycle, removed his helmet and told Investigator Good that he did not have a license. There was no ignition interlock on the motorcycle. Claytor was charged with operating a motor vehicle, he having been declared an habitual offender and this being the second or subsequent such offense, in violation of Code § 46.2-357.

The Commonwealth filed a motion *in limine* seeking to preclude any evidence concerning Claytor's belief or state of mind as to his status as an habitual offender. The Commonwealth argued that Code § 46.2-357 does not include any mens rea or intent element, and Claytor's subjective belief regarding his status was, therefore, irrelevant and potentially confusing to the jury. Further, the Commonwealth pointed to Commonwealth v. Norman, 268 Va. 539, 542, 604 S.E.2d 82, 83 (2004) (holding that restoration of a driver's privilege to drive on a restricted basis does not terminate his status as an habitual offender), and argued that because Claytor's status, as a matter of law, was that of an habitual offender, Claytor's subjective belief was irrelevant.

Claytor countered that this Court established in Reed v. Commonwealth, 15 Va. App. 467, 468, 424 S.E.2d 718, 718 (1992), a non-statutory knowledge element to the offense of operating a motor vehicle after having been declared an habitual offender. Further, on motion to reconsider,[1] Claytor argued that under Miller v. Commonwealth, 25 Va. App. 727, 492 S.E.2d

---

[1] Judge Ludwig noted in the opinion letter that he drafted the letter before the motion to reconsider was received, but received the motion to reconsider the day before issuing the opinion letter. Judge Ludwig stated on the record that although he read the motion to reconsider after drafting the opinion letter, he did read it before publishing the opinion and he "didn't see any basis to change the opinion after [he] had [Claytor's] motion for reconsideration."

482 (1997), his reliance on the language of the order justified his subjective belief that he was not an habitual offender. The trial court took the motions under advisement and subsequently issued an opinion letter in which, after a thorough, well-reasoned, and methodical analysis of the law, it granted the Commonwealth's motion *in limine*. Specifically, the trial court ruled that Claytor could not "introduce evidence of his subjective belief whether he was (or, more specifically, was not) an habitual offender."

Claytor then entered a conditional plea of guilty.[2] Acknowledging the conditional plea and preserving Claytor's right of appeal, the trial court convicted Claytor of driving after being declared an habitual offender, second or subsequent offense, in violation of Code § 46.2-357. This appeal followed.

## II. ANALYSIS

On appeal, Claytor argues that the trial court erred in granting the Commonwealth's motion to exclude evidence of Claytor's subjective belief that he was not an habitual offender and Claytor's reliance on the wording of the order. We disagree and affirm the conviction.

The admissibility of evidence is within the broad discretion of the trial court, and a ruling will not be disturbed on appeal in the absence of an abuse of discretion. See A. H. v. Rockingham Pub. Co., Inc., 255 Va. 216, 224, 495 S.E.2d 482, 487 (1998). Evidence is generally admissible if it is both relevant and material. See Evans-Smith v. Commonwealth, 5 Va. App. 188, 196, 361 S.E.2d 436, 441 (1987).

---

[2] Code § 19.2-254 permits a defendant, with the approval of the court and the consent of the Commonwealth, to enter a conditional guilty plea and preserve for appeal "a review of the adverse determination of any specified pretrial motion." To date we have not considered whether this provision applies to a pre-trial evidentiary ruling such as the one before us. However, the Commonwealth consented to the conditional guilty plea at trial and has not challenged it before this Court. Accordingly, we will assume that the issue is properly before us.

A.  Status Element Under <u>Norman</u> and Knowledge Element Under <u>Reed</u>

The Commonwealth argues that <u>Norman</u>'s holding that an habitual offender's status is not terminated by an order permitting restricted driving, and as a result, Claytor's subjective belief regarding his status is irrelevant, and thereby inadmissible.  Claytor distinguishes between his status as an habitual offender and his knowledge that he was an habitual offender, and argues that his subjective *knowledge* was relevant because <u>Reed</u> adds a mens rea element to the habitual offender statute.

1.  Status Element Under <u>Norman</u>

The Supreme Court addressed the status of habitual offenders in <u>Norman</u>.  In that case, "the sole issue [was] whether the order of the circuit court restoring Norman's privilege to operate a motor vehicle on the condition that he fulfill certain requirements terminated his habitual offender status."  <u>Norman</u>, 268 Va. at 542, 604 S.E.2d at 83.  The Court concluded that it did not.  <u>Id.</u>  Norman did not have a driver's license when he was stopped by a deputy sheriff, but had the court's "Restricted Driver's License Order."  <u>Id.</u> at 542, 604 S.E.2d at 84.  The Court rejected Norman's argument that the order permitting restricted driving terminated his habitual offender status.  <u>Id.</u> at 547, 604 S.E.2d at 86.  The Court reasoned that a driver's habitual offender status continues under a restricted license and is terminated only when his driving privileges have been fully restored.  <u>Id.</u> at 548, 604 S.E.2d at 87.  "[A] restricted license will never mature into a full restoration of driving privileges."  <u>Id.</u> at 547, 604 S.E.2d at 86; <u>see also</u> <u>Varga v. Commonwealth</u>, 260 Va. 547, 551, 536 S.E.2d 711, 714 (2000) (holding that once a person is declared an habitual offender by order of a trial court, he retains that status and loses his driving privilege until that person successfully petitions the court to have that status removed and his privilege to drive restored under one of the code sections permitting such petitions).

Under the September 21, 2011 order, the circuit court restored Claytor's privilege to drive on a restricted basis only and subject to specified conditions. Thus, under Norman, the order's reference to Claytor "reverting to habitual offender status" could not have had the effect of terminating Claytor's habitual offender status even if the reference is interpreted as purporting to do so. Regardless of Claytor's subjective belief, he was an habitual offender on October 21, 2011.

### 2. Knowledge Element under Reed

Claytor stresses the holding of this Court in Reed to support his argument that actual knowledge of his status as an habitual offender is a required element of Code § 46.2-357. "An essential element of the offense of driving after having been declared an habitual offender is that the operator knew at the time he operated a motor vehicle in Virginia that he was doing so after he had been declared an habitual offender and ordered not to drive." Reed, 15 Va. App. at 468, 424 S.E.2d at 718. The Reed Court reasoned that although Code § 46.2-357, addressing operation of a motor vehicle by a person who has been declared an habitual offender, does not have a mens rea or scienter element, code sections[3] addressing the process of declaring a driver an habitual offender "bespeak a requirement that the person receive actual notice of having been declared an habitual offender and directed not to drive before he can be convicted and imprisoned for driving after *having been declared* an habitual offender." Id. at 471, 424 S.E.2d at 720-21 (emphasis added). The Supreme Court has confirmed this Court's interpretation of Code § 46.2-357. See Bishop v. Commonwealth, 275 Va. 9, 13, 654 S.E.2d 906, 908 (2008) (reversing conviction where defendant had not received actual notice of his adjudication as an habitual offender).

---

[3] The Court relied primarily on Code § 46.2-355, Reed, 15 Va. App. at 468, 424 S.E.2d at 718, which was repealed in 1999, Holsapple v. Commonwealth, 266 Va. 593, 600, 587 S.E.2d 561, 565 (2003).

The principle articulated by <u>Reed</u> is a narrow one, focusing on whether the defendant had received notice that he *had been* adjudicated an habitual offender. "An essential element of the offense of driving after having been declared an habitual offender is that the operator knew at the time he operated a motor vehicle in Virginia that he was doing so *after he had been declared* an habitual offender and ordered not to drive." <u>Reed</u>, 15 Va. App. at 468, 424 S.E.2d at 718. "The question is whether actual personal notice that one *has been declared an habitual offender* and ordered not to drive is required in order to obtain a criminal conviction under Code § 46.2-357." <u>Id.</u> at 470, 424 S.E.2d at 720. This Court's focus was on notice that the driver had been declared an habitual offender, not scienter or mens rea. After acknowledging that some courts interpret their habitual offender statutes as not requiring scienter or mens rea as an element and acknowledging that Code § 46.2-357 does not expressly require that the Commonwealth prove scienter or mens rea, the <u>Reed</u> Court nevertheless concluded that a person must "receive actual *notice* of *having been declared* an habitual offender and directed not to drive before he can be convicted and imprisoned for driving after having been declared an habitual offender." <u>Id.</u> at 470, 471, 424 S.E.2d at 720-21. Significantly, <u>Reed</u> does not require that a driver receive notice of his *current status*, but rather that he receive notice that he *has been declared* an habitual offender.

There is no dispute that Claytor had actual notice that he had been adjudicated an habitual offender. He was physically present in the courtroom when he was found to be an habitual offender. He subsequently was convicted of driving after having been declared an habitual offender. Roughly seven years later, Claytor acknowledged that he had been adjudged an habitual offender when he petitioned for restoration of driving privileges. This Court's holding in <u>Reed</u> requires that an habitual offender have knowledge, through actual notice, of the determination that he is an habitual offender before he can be charged with driving while an

habitual offender.  Claytor received such notice.  Under Norman, Claytor's status as an habitual

offender did not change after the order was issued, regardless of the wording of the order.

Therefore, no notice requirement was created, and Claytor's subjective knowledge or belief

regarding his status is irrelevant.  Thus, the trial court did not abuse its discretion in granting the

Commonwealth's motion to suppress evidence of Claytor's subjective belief.

B.  Due Process Exception under Miller

Although Claytor's status as an habitual offender did not change on account of the order,

Claytor argues that, under the Due Process Clause of the Fourteenth Amendment, his subjective

belief regarding his status was relevant because he reasonably relied on the wording of the order

in forming his erroneous belief.  Claytor points to this Court's decision in Miller.

In Miller, the defendant, a convicted felon, knew he could not legally possess a firearm

and asked his probation officer if he could nonetheless possess a muzzle-loading rifle.  Miller, 25

Va. App. at 730, 492 S.E.2d at 484.  Miller's inquiry stemmed from the fact that Virginia

distinguishes muzzle-loading rifles from other firearms, including by issuing a different type of

permit for muzzle-loading firearms and by not requiring a criminal background check for

purchase of such firearms.  Id.  Miller inquired of his probation officer, who affirmed to Miller

that he could legally possess a muzzle-loading rifle in spite of the fact that he was a convicted

felon who could not legally possess other firearms.  Id.  A subsequent search of Miller's home by

police revealed the muzzle-loading rifle, and Miller was charged with possession of the gun as a

convicted felon under Code § 18.2-308.2.  Id.  Miller argued that his conviction was precluded

on due process grounds because he reasonably relied on the advice given to him by his probation

officer.  Id. at 731, 492 S.E.2d at 484.

This Court noted that the rule "ignorance of the law is no excuse" is applicable to both

crimes that are *malum in se* ("wrong" by virtue of their inherent character) and crimes that are

- 8 -

*malum prohibitum* ("wrong" only because they are prohibited). Id. at 732, 492 S.E.2d at 485. Nevertheless, "[t]he rationale underlying the rule is less compelling for crimes that are *malum prohibitum*" because of the increasing number and complexity of such crimes. Id. at 731-32, 492 S.E.2d at 485. This Court framed the ultimate due process inquiry as "whether a defendant's conviction, for reasonably and in good faith doing that which he was told he could do, is fundamentally unfair in light of the content of the information he received and its source." Id. at 737, 492 S.E.2d at 487. The defendant bears the burden of establishing the affirmative defense by showing the legal sufficiency of the content and source of the information. Id. at 737, 492 S.E.2d at 488.

> With respect to content, the defense is available only where the information upon which the defendant has relied is an *affirmative assurance* that the conduct giving rise to the conviction is lawful. In the absence of such an affirmative assurance, the due process concerns that the defense is designed to protect are not implicated, and the defense fails.

Id. at 738, 492 S.E.2d at 488 (emphasis added). With respect to the source of the information, the defense is available only where information upon which the defendant relied was received from a "public officer or body charged by law with responsibility for defining permissible conduct with respect to the offense at issue." Id. at 739, 492 S.E.2d at 489. Accepting without deciding that the order qualified as a legally sufficient source, Claytor's affirmative defense still fails as a matter of law, rendering his subjective belief irrelevant.

The reasonable reliance defense under Miller is available only where a defendant seeks to determine if "the conduct giving rise to the conviction is lawful" and the source gives "affirmative assurance" that it is. Id. at 738, 492 S.E.2d at 488. In this case, Claytor sought no determination of conduct. The conduct for which Claytor was convicted was driving while having been determined an habitual offender. Claytor never sought from the court, or anyone else, a determination that his driving—without a license and without an ignition interlock device

on the motor vehicle—was permissible conduct under the terms of the order. Thus, the court had no occasion to give an "affirmative assurance" that such conduct was permissible. <u>Miller</u> deals with permissible conduct, not one's belief regarding his status. Claytor's inference, based on the order's wording, that his status had changed does not give rise to an affirmative defense that he reasonably relied on the court's affirmative assurance that his conduct was permissible under the terms of the order. Or, to put it another way, the Due Process Clause is not implicated simply because a defendant misreads or misunderstands a court order. Because Claytor's affirmative defense is without legal basis, the trial court did not err in granting the Commonwealth's motion to suppress evidence related solely to that affirmative defense.

## III. Conclusion

For the foregoing reasons, we affirm Claytor's conviction.

<u>Affirmed.</u>