COURT OF APPEALS OF VIRGINIA

Present:   Chief Judge Huff, Judges Humphreys and O'Brien
Argued at Fredericksburg, Virginia

NICHOLAS GABRIEL PARKER DAVIS

OPINION BY
JUDGE MARY GRACE O'BRIEN
MAY 15, 2018

v.      Record No. 0825-17-4

COMMONWEALTH OF VIRGINIA

FROM THE CIRCUIT COURT OF FAUQUIER COUNTY
Jeffrey W. Parker, Judge

Kevin J. Gerrity, Deputy Public Defender, for appellant.

Eugene Murphy, Senior Assistant Attorney General (Mark R.
Herring, Attorney General, on brief), for appellee.


A jury convicted Nicholas Gabriel Parker Davis ("appellant") of possessing a firearm while

subject to a protective order, in violation of Code § 18.2-308.1:4(B).  At trial, appellant asserted a

due process defense, arguing that he reasonably relied on information from the Fairfax Juvenile and

Domestic Relations District Court ("JDR court") that the protective order was no longer in effect.

On appeal, he contends that the trial court erred in denying his motion to strike and refusing his

proffered jury instruction on the affirmative defense of reasonable reliance.  Because we find that

the court erred in determining that the defense did not apply, we reverse.

BACKGROUND

The undisputed evidence established that, on October 12, 2016, while appellant was parked

at a McDonald's restaurant, a sheriff's deputy observed an AR-15 rifle on the backseat of his car.

Appellant explained that he had been to a local shooting range and that the gun belonged to his

friend.  The deputy checked appellant's information through dispatch and learned that appellant was

the subject of a protective order.  When the deputy told appellant about the protective order,

appellant responded, "That was dismissed." The deputy arrested appellant for possession of a firearm while subject to a protective order.

Eight months earlier, on February 8, 2016, appellant's wife, Liliana Zuniga, obtained a protective order in the JDR court. The order, issued pursuant to Code § 16.1-279.1, prohibited appellant from having any contact with Zuniga or their minor child, and it granted Zuniga custody of the child "until further order of the court." The protective order also stated:

> Pursuant to Code of Virginia § 18.2-308.1:4, [appellant] shall not purchase or transport any firearm while this order is in effect. . . . Either party may at any time file a motion with the court requesting a hearing to dissolve or modify this order; however, this order remains in full force and effect unless and until dissolved or modified by the court.

A specific case number was listed on the order, and the attached certificate of service indicated that appellant was personally served with the order on February 9, 2016.

Appellant and Zuniga appeared *pro se* in the JDR court on February 18 for a "status hearing." On that date, the judge signed an order reflecting that "[p]etitioner wishes to non-suit *all* petitions" and "[*a*]*ll* petitions [are] dismissed." (Emphasis added). The order listed three case numbers and had boxes checked indicating the types of cases heard: "custody," "child support," and "spousal support." The order neither addressed the protective order nor referred to its specific case number.

Following appellant's arrest, on December 28, 2016, Zuniga wrote a letter to the JDR court and requested that the protective order be dismissed. In the letter, Zuniga wrote, "Both [of us] thought the order was dropped due to our court [appearance] back in January or February." The JDR court entered an order dissolving the protective order on January 11, 2017.

Zuniga testified at appellant's criminal trial. She stated that, prior to the February 18 hearing in JDR court, she decided to dissolve the protective order and dismiss the other petitions because "we both agreed to work on our marriage and to fix everything for the baby." According to

- 2 -

Zuniga, she asked the JDR judge if "everything against [appellant] – child support, custody of the baby and the protective order" could "be dropped," and the JDR judge responded that "[a]ll matters against [appellant] have been dropped." Appellant and Zuniga left the courthouse together, took a family vacation, and remained reconciled at the time of trial.

Appellant also testified that following the February 18 hearing, he and Zuniga "both thought [the protective order] was dropped." He stated that at the JDR hearing, Zuniga "asked the judge to drop everything, the custody, the restraining order, the spousal support, [and] just to let us fix it." According to appellant, he did not know that the protective order was still in effect until his arrest on October 12, 2016.

At the conclusion of the evidence, appellant moved to strike and argued that a conviction would violate his due process rights because he reasonably relied on information from the JDR court that the protective order was dismissed. The court denied the motion, ruling that the defense did not apply because "[w]e don't have any official agency giving advice to the defendant as to not having to comply with the terms of the protective order[,] and I don't have anything from the judge saying that the protective order was dissolved."

Appellant offered a jury instruction on the affirmative defense of reasonable reliance, which he had adapted from Miller v. Commonwealth, 25 Va. App. 727, 492 S.E.2d 482 (1997). The court refused the instruction, ruling that the defense did not apply because the JDR judge did not qualify as a "government official" who is "charged by law with responsibility for defining permissible conduct with respect to the offense at issue" under Miller, 25 Va. App. at 739, 492 S.E.2d at 489. The court further ruled that a court speaks through its orders, and the February 18 JDR order was unambiguous and did not address the protective order.

During deliberations, the jury asked the following question: "If we believe [appellant] thought the protective order was dismissed in February 2016, would that constitute reasonable doubt

and nullify the weapons possession charge?" The court responded: "The jury has to apply the instructions submitted for guidance in deciding this case." The jury found appellant guilty and recommended a one-dollar fine.

ANALYSIS

The decision to grant or deny proffered jury instructions rests within the sound discretion of the trial court. Sarafin v. Commonwealth, 288 Va. 320, 325, 764 S.E.2d 71, 74 (2014). The Court's "sole responsibility in reviewing [jury instructions] is to see that the law has been clearly stated and that the instructions cover all issues which the evidence fairly raises." Swisher v. Swisher, 223 Va. 499, 503, 290 S.E.2d 856, 858 (1982). Instructions must be supported by "more than a mere scintilla of evidence." Herbin v. Commonwealth, 28 Va. App. 173, 181, 503 S.E.2d 226, 230 (1998) (quoting Gibson v. Commonwealth, 216 Va. 412, 417, 219 S.E.2d 845, 849 (1975)). "If a proffered instruction finds any support in credible evidence, its refusal is reversible error." McClung v. Commonwealth, 215 Va. 654, 657, 212 S.E.2d 290, 293 (1975).

Appellant concedes that he possessed a firearm while subject to a protective order, but argues that he had a constitutional due process right to reasonably rely on affirmative assurances by a government official that the protective order had been dismissed. He asserts that he was entitled to a jury instruction on his affirmative defense because he presented evidence that the JDR judge stated "all matters . . . have been dropped," and entered an order indicating that "all petitions [are] dismissed."

We have recognized that a due process defense is available to a defendant who is on trial "for reasonably and in good faith doing that which he was told he could do." Miller, 25 Va. App. at 737, 492 S.E.2d at 487. The defense is based on the premise that "convicting an individual who has reasonably relied on the advice of a state actor is so fundamentally unfair as to raise due process concerns." Id. at 739, 492 S.E.2d at 488. "The defendant bears the burden of establishing the

affirmative defense," and establishing "as a threshold matter, the legal sufficiency of the content and source of the information received."  Id. at 737, 492 S.E.2d at 487-88.  "The application of the defense then requires a factual determination whether the defendant's reliance upon the information received was reasonable and in good faith."  Id.

Citing Miller, this Court articulated the three requirements to successfully raise a due process defense in Branch v. Commonwealth, 42 Va. App. 665, 593 S.E.2d 835 (2004).  A defendant must present evidence:

> 1) that he was assured that the conduct giving rise to the conviction was lawful; 2) that the assurance was given by a "government official," *i.e.*, "a public officer or body charged by law with responsibility for defining permissible conduct with respect to the offense at issue"; and 3) that, based on the totality of the circumstances, reliance upon the advice was reasonable and in good faith.

Id. at 671, 593 S.E.2d at 837 (quoting Miller, 25 Va. App. at 738-39, 745, 492 S.E.2d at 488-89, 491).

In Miller, we reversed a conviction for possessing a firearm by a convicted felon because the defendant had been advised by his probation officer that he could lawfully possess a muzzle-loading rifle for hunting.  25 Va. App. at 729-30, 492 S.E.2d at 484.  At issue was whether the probation officer qualified as a "government official" who was "charged by law with responsibility for defining permissible conduct with respect to the offense at issue."  Id. at 739, 492 S.E.2d at 489.  Because a probation officer's authority necessarily requires an interpretation of permissible conduct by a probationer, we ruled that "Miller's probation officer was . . . a source legally sufficient to invoke the Due Process Clause as a bar to his prosecution and conviction."  Id. at 745, 492 S.E.2d at 491.  See also Palmer v. Commonwealth, 48 Va. App. 457, 464-66, 632 S.E.2d 611, 614-15 (2006) (holding that a juvenile's North Carolina probation officer was a source legally sufficient to invoke

- 5 -

the due process clause, because a statute authorized out-of-state probation officers to serve as adjuncts to the Virginia system).

Here, the court denied appellant's request for a "reasonable reliance" instruction because it found that the JDR judge was not a "government official" who could give an affirmative assurance that the protective order was dismissed. The court stated:

> I don't think a judge is a "government official" as used in [the Miller] opinion.
>
> A government official . . . is someone such as a probation officer or a police officer or maybe a Commonwealth's attorney, or someone otherwise charged with duties to enforce the law but not in the same scope as a judge would be in terms of administering the law.
>
> . . . .
>
> So I don't believe that we have a government official charged by law with the responsibility for defining legal conduct. Judges just don't sit around and define legal conduct. We adjudicate cases. We don't give advisory opinions and recommendations to individuals as to how they should comport themselves.

However, case law recognizes that judges have a duty to interpret and apply the law and therefore their statements can implicate the reasonable reliance defense. See United States v. Brady, 710 F. Supp. 290, 294-95 (D. Colo. 1989) (holding that due process precluded a conviction for possessing a weapon as a felon, after a judge advised the defendant that he could use a gun for hunting and trapping), cited with approval in Miller, 25 Va. App. at 740, 492 S.E.2d at 489. Judges "define permissible conduct" under the law and enforce compliance. Miller, 25 Va. App. at 739, 492 S.E.2d at 489. "The case for allowing the due process defense when the advice is given by a judge is . . . compelling." Brady, 710 F. Supp. at 295.

> Because of the unique role of the judiciary in interpreting the law, many courts have recognized that it "would be an act of 'intolerable injustice' to hold criminally liable a person who had engaged in certain conduct in reasonable reliance on a judicial opinion instructing that such conduct is legal."

Id. (quoting Kratz v. Kratz, 477 F. Supp. 463, 481 (E.D. Pa. 1979)).  See id. (collecting cases).  Here, the protective order was entered in the JDR court and subject to enforcement and modification there.  The JDR judge, who was making a statement about the status of the protective order, is therefore a source legally sufficient to implicate due process concerns.  Accordingly, the court erred in finding that the JDR judge could not be a "government official" for purposes of the reasonable reliance defense.

Additionally, we find that appellant's undisputed evidence of an affirmative assurance was legally sufficient to support giving an instruction.  See Miller, 25 Va. App. at 737 n.5, 492 S.E.2d at 488 n.5.  "The reasonable reliance defense under Miller is available only where a defendant seeks to determine if 'the conduct giving rise to the conviction is lawful' and the source gives 'affirmative assurance' that it is."  Claytor v. Commonwealth, 62 Va. App. 644, 655, 751 S.E.2d 686, 691 (2013) (quoting Miller, 25 Va. App. at 738, 492 S.E.2d at 488).  In Claytor, this Court found the affirmative defense did not apply where the defendant subjectively interpreted a court order to have unconditionally reinstated his driving privileges.  Id. at 655-56, 751 S.E.2d at 691.  We noted that the defendant "sought no determination of conduct," and therefore, "the court had no occasion to give an 'affirmative assurance' that such conduct was permissible."  Id.  "[T]he Due Process Clause is not implicated simply because a defendant misreads or misunderstands a court order."  Id. at 656, 751 S.E.2d at 691.

Here, Zuniga specifically requested dismissal of the protective order, and the JDR judge responded that all matters were dropped.  Although the order stating that "all petitions [are] dismissed" did not specifically reference the protective order, other evidence corroborated the judge's verbal assurance.  Appellant and Zuniga left the JDR hearing together freely, without intervention from law enforcement that appellant was violating a protective order.  When appellant was later found in possession of the firearm and asked about the protective order, he told police that

it had been dismissed. Zuniga's December 2016 motion to dismiss the protective order stated that both she and appellant thought it had already been dissolved.

In contrast to Claytor, appellant not only relied on the court's order, but more importantly, on the court's verbal dismissal of all matters after Zuniga specifically requested dismissal of the protective order. This case is more analogous to Miller, in which we found the content legally sufficient to invoke due process concerns because the defendant expressly asked for and received information about the offense at issue. Miller, 25 Va. App. at 741, 492 S.E.2d at 489-90. The evidence was similarly sufficient here: appellant sought and received an affirmative assurance that the protective order was no longer active and, therefore he was no longer subject to its express prohibition against possessing a firearm.

The issue of whether appellant's reliance on this affirmative assurance from a government official was reasonable and in good faith is a question of fact to be determined by the jury, based on the totality of the circumstances. See id. at 737, 492 S.E.2d at 487-88. Because the court erroneously concluded that the JDR judge was not a government official, appellant was not permitted to instruct the jury on his affirmative defense when more than a scintilla of evidence existed in support of the instruction. Accordingly, we reverse and remand the case for retrial, if the Commonwealth be so advised.

Reversed and remanded.