COURT OF APPEALS OF VIRGINIA

Present: Judges Humphreys, Kelsey and Petty
Argued at Richmond, Virginia

GEORGE E. BOONE, A/K/A
  GEORGE EDWARD BOONE, JR.

v.      Record No. 1510-13-2

COMMONWEALTH OF VIRGINIA

OPINION BY
JUDGE ROBERT J. HUMPHREYS
MAY 20, 2014

FROM THE CIRCUIT COURT OF CHESTERFIELD COUNTY
Frederick G. Rockwell, III, Judge

Horace F. Hunter (Hunter & Lipton, PC, on brief), for appellant.

Katherine Quinlan Adelfio, Assistant Attorney General (Mark R.
Herring, Attorney General; Aaron J. Campbell, Assistant Attorney
General, on brief), for appellee.

George E. Boone ("Boone") appeals his conviction of operating a motor vehicle after

having been declared a habitual offender, second or subsequent offense, in violation of Code

§ 46.2-357, after a bench trial in the Circuit Court of Chesterfield County ("trial court"). Boone

argues that the trial court erred in admitting his Department of Motor Vehicles ("DMV")

transcript into evidence because it violates his Sixth Amendment Confrontation Clause rights and

that the evidence is insufficient to support his conviction.

I. BACKGROUND

This Court reviews the evidence in the light most favorable to the prevailing party in the

trial court—in this case, the Commonwealth. Commonwealth v. Hudson, 265 Va. 505, 514, 578

S.E.2d 781, 786 (2003). So viewed, the evidence established the following.

On January 31, 2012, around 6:00 p.m., Virginia State Trooper D.A. Robinson and other

troopers were participating in a "checking detail" in Chesterfield on Interstate 95 ("I-95"). The

checking detail was set up so that vehicles turning off of Route 10 onto I-95 would have to pass through the checkpoint about fifty meters from the turn onto I-95. As Robinson was watching traffic, he noticed that a vehicle that had been waiting in line pulled off onto the shoulder of the roadway just before the checking point. Robinson walked up to the vehicle from the checking point. Robinson approached the driver's side and had a conversation with Boone. Boone said he was having engine problems and he had to pull off the roadway. Robinson asked Boone for his driver's license, and Boone stated that his license was in his wallet which he had left at home. Robinson "asked Mr. Boone to stop lying . . . and to stop playing games." Then Boone "admitted that he was suspended." Boone provided his social security number to Robinson, which enabled Robinson to look at Boone's DMV driving transcript and see that Boone was a habitual offender.

The grand jury indictment charged that Boone feloniously operated a motor vehicle on the highways of Virginia after having been found to be a habitual offender, second or subsequent offense, in violation of Code § 46.2-357. Robinson was the only witness at Boone's trial. The Commonwealth introduced Boone's DMV transcript, to which Boone's counsel objected. The trial court overruled Boone's objection.

Boone's DMV transcript dated February 2, 2012, highlighted with asterisks at the top, "ATTENTION: PREVIOUS DRIVE AFTER H.O." and "NOTICE OF SUSPENSION/ REVOCATION RECEIVED." A few lines down, the transcript read, "DRIVER LICENSE STATUS: REVOKED HABITUAL OFFENDE[R]." Boone's transcript indicated that he was adjudicated a habitual offender in the Richmond General District Court on October 29, 1998, and in the Henrico County General District Court on November 18, 1998. Since those dates, the transcript shows that Boone has been convicted six times for operating a motor vehicle after having been declared a habitual offender in violation of Code § 46.2-357.

In addition to the DMV transcript, the Commonwealth's attorney entered into evidence Commonwealth's Exhibit 2, multiple certified conviction orders convicting Boone of driving after having been declared a habitual offender. As indicated by the DMV transcript, the most recent conviction order in the record was dated July 20, 2011, convicting Boone of misdemeanor driving while a habitual offender in Henrico County Circuit Court. The date of that offense was March 24, 2011. Exhibit 2 also includes six other orders from various Virginia circuit courts convicting Boone of driving after having been declared a habitual offender, with dates of offense ranging from 2001 to 2007. The trial court overruled Boone's motion to strike and found him guilty of violating Code § 46.2-357.

## II. ANALYSIS

### A. The DMV Transcript is Not Testimonial

Boone's first assignment of error is that "[t]he trial court erred in admitting into evidence [Boone's] DMV transcript as proof that [he] was, in fact, an habitual offender." Boone asserts that the admission of the DMV transcript was error of constitutional import: "The testimony in this case is a DMV transcript being admitted into evidence in lieu of the actual habitual offender adjudication order. This violated [Boone's] right to confront and cross-examine his accuser under the Confrontation Clause of the Sixth Amendment of the United States Constitution."

Appellate courts review evidentiary rulings under an abuse of discretion standard. Boyce v. Commonwealth, 279 Va. 644, 649, 691 S.E.2d 782, 784 (2010). However, "constitutional arguments present questions of law that this Court reviews *de novo*." Crawford v. Commonwealth, 281 Va. 84, 97, 704 S.E.2d 107, 115 (2011).

"In all criminal prosecutions, the accused shall enjoy the right . . . to be confronted with the witnesses against him." U.S. Const. amend. VI. In Crawford v. Washington, 541 U.S. 36 (2004), the United States Supreme Court held that the Confrontation Clause does not allow the

admission of testimonial statements of a witness who is absent from trial unless certain requirements are satisfied—the witness must be unavailable and the defendant must have had a prior opportunity to cross-examine the witness. Id. at 59. However, not all witness statements or public records introduced at trial are necessarily testimonial. The Supreme Court held that evidence falling within some hearsay exceptions, such as business records, "by their nature" are not testimonial. Id. at 56. The Court further explained the non-testimonial nature of business records in Melendez-Diaz v. Massachusetts, 557 U.S. 305 (2009): "Business and public records are generally admissible absent confrontation not because they qualify under an exception to the hearsay rules, but because—*having been created for the administration of an entity's affairs and not for the purpose of establishing or proving some fact at trial*—they are not testimonial."[1] Id. at 324 (emphasis added).

This Court has previously determined that a DMV transcript is not "testimonial." Jasper v. Commonwealth, 49 Va. App. 749, 644 S.E.2d 406 (2007). In Jasper, the appellant objected to the admission of his DMV transcript on the ground that its content was "testimonial" hearsay. Id. at 752, 644 S.E.2d at 408. The appellant was prosecuted for violating Code § 46.2-391, "Revocation of license for multiple convictions of driving while intoxicated." Id. at 753, 644 S.E.2d at 408-09. The transcript was introduced to prove that the appellant's license had been revoked and that he had notice of the revocation. Id. "[T]he challenged document was generated as a result of a request by law enforcement personnel for a search of certain public records" and "involved the certification of [a state] official regarding the existence of certain records." Id. at 757, 644 S.E.2d at 411. "[T]he person completing the certification was the custodian of the records searched, and *the underlying records were not created in anticipation of the litigation* in

---

[1] Reports or records do not qualify as business or public records "if the regularly conducted business activity is the production of evidence for use at trial" and the report was calculated for use in court, rather than for business. Melendez-Diaz, 557 U.S. at 321.

which a summary of their contents was offered into evidence." Id. (emphasis added). This Court found that the admission of the DMV transcript did not violate the appellant's Confrontation Clause rights. Id.

The Jasper Court followed the rationale applied in Michels v. Commonwealth, 47 Va. App. 461, 624 S.E.2d 675 (2006). In Michels, we held that an official record from an out-of-state agency was not testimonial where the record was a computer-generated official record "prepared in the non-adversarial setting in which 'the factors likely to cloud the perception of an official engaged in the more traditional law enforcement functions of observation and investigation of crime are simply not present.'" Id. at 465, 624 S.E.2d at 678 (quoting State v. Dedman, 102 P.3d 628, 635 (N.M. 2004)).

While our analyses in Jasper and Michels preceded Melendez-Diaz, we conclude that Melendez-Diaz does not demand a different result regarding the use of a DMV transcript as evidence at trial. In Melendez-Diaz, the Court found that the defendant's right to confront witnesses against him was violated when the trial court admitted into evidence "affidavits reporting the results of forensic analysis which showed that material seized by the police and connected to the defendant was cocaine." 557 U.S. at 307, 329. The Court stated that the affidavits or "certificates" created for use at trial were "functionally identical to live, in-court testimony, doing 'precisely what a witness does on direct examination.'" Id. at 310-11 (quoting Davis v. Washington, 547 U.S. 813, 830 (2006)). Responding to the dissent, the Melendez-Diaz majority distinguished the forensic analysts' certificates from a clerk's certificate authenticating an official record. Id. at 322. In authenticating an official record (or copy of an official record) for use as evidence, a clerk is permitted to "'certify the correctness of a copy of a record kept in his office,'" but he is not permitted to "'furnish, as evidence for the trial of a lawsuit, his interpretation of what the record contains or shows, or to certify to its substance or effect.'" Id.

at 322 (quoting State v. Wilson, 75 So. 95, 97 (Louis. 1917)).  "A clerk could by affidavit

*authenticate* or provide a copy of an otherwise admissible record, but could not do what the

analysts did here:  *create* a record for the sole purpose of providing evidence against a

defendant."  Id. at 322.

The DMV transcript is a printout of information maintained in the DMV database for the

purpose of administration of the Motor Vehicle Code, Title 46.2 of the Virginia Code.  To that

end, the database includes summaries of court orders to help DMV personnel and law

enforcement determine whether individuals are permitted to drive on the highways of the

Commonwealth.  Thus, the compilation of records has "been created for the administration of an

entity's affairs and not for the purpose of establishing or proving some fact at trial."  Melendez-

Diaz, 557 U.S. at 324.  While the printout of the transcript was requested for use at Boone's trial,

as we said in Jasper, the underlying records certified by a state official were not created in

anticipation of litigation.[2]  Jasper, 49 Va. App. at 757, 644 S.E.2d at 411.  In light of Melendez-

Diaz, we hold that Jasper is still good law, and therefore, the DMV transcript was not testimonial

and Boone's Confrontation Clause rights were not violated when the trial court allowed it into

evidence.

### B.  Sufficiency of the Evidence

Boone's second assignment of error is that "[t]he trial court erred in finding that the

evidence was sufficient as a matter of law to find [him] guilty of driving after having been

---

[2] Boone argues that a copy of the court order declaring him a habitual offender is required
to prove his status as such.  However, we fail to see the distinction, as far as the testimonial
nature of the documents, between a prosecutor obtaining a copy of a court order reflecting
proceedings in that court and certified by the clerk of court, and the prosecutor requesting a copy
of the DMV transcript authenticated by the Commissioner reflecting the same information.
Although in both cases the prosecutor requests a copy for use in trial, in neither case is the
underlying record created or maintained for the purpose of criminal prosecution.

declared an habitual offender. The evidence failed to establish that [he] had been adjudicated an habitual offender."

When the sufficiency of the evidence is challenged on appeal, this Court must "'examine the evidence that supports the conviction and allow the conviction to stand unless it is plainly wrong or without evidence to support it.'" Commonwealth v. McNeal, 282 Va. 16, 20, 710 S.E.2d 733, 735 (2011) (quoting Vincent v. Commonwealth, 276 Va. 648, 652, 668 S.E.2d 137, 139-40 (2008)). We review the evidence in the light most favorable to the Commonwealth, as the prevailing party below, and determine whether "'any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.'" Id. (quoting Jackson v. Virginia, 443 U.S. 307, 319 (1979)). "Furthermore, we 'accord the Commonwealth the benefit of all inferences fairly deducible from the evidence.'" Brooks v. Commonwealth, 282 Va. 90, 95, 712 S.E.2d 464, 466 (2011) (quoting Glenn v. Commonwealth, 275 Va. 123, 130, 654 S.E.2d 910, 923 (2008)).

Code § 46.2-357(A) provides that, "It shall be unlawful for any person determined or adjudicated an habitual offender to drive any motor vehicle or self-propelled machinery or equipment on the highways of the Commonwealth while the revocation of the person's driving privilege remains in effect." "To establish a violation of that statute, the Commonwealth has to prove beyond a reasonable doubt that, at the time of an alleged driving offense, a defendant was adjudicated a habitual offender and his/her privilege to operate a motor vehicle was revoked." [3]

---

[3] The Commonwealth is also required to prove that the defendant received actual notice of his status as a habitual offender. Bishop v. Commonwealth, 275 Va. 9, 13, 654 S.E.2d 906, 908 (2008). The DMV transcript indicates that Boone received notice of his driving privilege suspension or revocation. However, Boone has not contested that he had actual notice of his status as a habitual offender at trial or on appeal. Therefore, we will not address this issue on appeal. Rules 5A:18 and 5A:20(c); see Winston v. Commonwealth, 51 Va. App. 74, 82 n.4, 654 S.E.2d 340, 345 n.4 (2007) (holding that the Court will not address an argument on appeal that the appellant did not include in his assignment of error).

Commonwealth v. Norman, 268 Va. 539, 544-45, 604 S.E.2d 82, 85 (2004). Driving while a determination that the driver is a habitual offender is in effect, as a second or subsequent offense, is a felony offense. Code § 46.2-357(B)(2) and (3). "[U]nless the terms of an order adjudicating habitual offender status specifically limit the effect of the order, 'the habitual offender status of the person so declared continues until that person successfully petitions the court to have that status removed and [the] privilege to drive restored.'" Norman, 268 Va. at 546, 604 S.E.2d at 86 (quoting Varga v. Commonwealth, 260 Va. 547, 551, 536 S.E.2d 711, 714 (2000)).

Boone simply argues that the evidence is insufficient to find him guilty of driving after having been declared a habitual offender solely because "[t]here was no certified copy of the order adjudicating him an habitual offender entered into evidence." However, there is no requirement in Code § 46.2-357 that the Commonwealth must introduce a court order declaring the defendant a habitual offender in order to prove its case.[4] The element of having been declared a habitual offender, like any element of a crime, may be proved by any direct or circumstantial evidence, as long as the evidence as a whole is sufficiently convincing to exclude

---

[4] Pursuant to the language of Code § 46.2-356, a court order is not the only method by which one may be determined to be a habitual offender:

> No license to drive motor vehicles in Virginia shall be issued to any person determined or adjudicated an habitual offender (i) for a period of ten years from the date of any final order of a court entered under this article *or if no such order was entered then the notice of the determination by the Commissioner finding the person to be an habitual offender* and (ii) until the privilege of the person to drive a motor vehicle in the Commonwealth has been restored by an order of a court entered in a proceeding as provided in this article.

(Emphasis added.) Further, Code § 46.2-369 provides that the Commissioner "may issue subpoenas for witnesses to attend, administer oaths, and take testimony in, the hearings provided in this chapter for the purpose of finding whether driver's licenses, license plates, or registrations should be suspended or revoked." However, all of the relevant entries on Boone's DMV transcript are associated with court adjudications.

all reasonable hypotheses of innocence. See Coleman v. Commonwealth, 226 Va. 31, 53, 307 S.E.2d 864, 876 (1983) ("Circumstantial evidence is as competent and is entitled to as much weight as direct evidence, provided it is sufficiently convincing to exclude every reasonable hypothesis except that of guilt.").

The evidence is sufficient to support Boone's conviction for driving after having been adjudicated a habitual offender. Commonwealth's Exhibit 2 includes multiple orders convicting Boone of driving after having been adjudicated a habitual offender. The most recent of these orders is a conviction on July 26, 2011, finding that Boone was guilty of driving while a habitual offender, second or subsequent offense, in violation of Code § 46.2-357. The date of the offense was March 24, 2011. This evidence supports a finding that Boone had been adjudicated a habitual offender and that his license was in a revoked status as recent as ten months prior to the January 31, 2012 offense. Moreover, Boone's driving transcript printed on February 2, 2012 indicated that Boone's driver license status was "Revoked Habitual Offende[r]." It also indicates that he was adjudicated a habitual offender in two different general district courts in Virginia in 1998, and subsequently convicted six times of driving after having been declared a habitual offender. Further, according to Code § 46.2-356 (cited *supra* in footnote 4), a habitual offender must petition the circuit court for restoration of his driving privileges. Varga, 260 Va. at 551, 536 S.E.2d at 714. Here, nothing in the record suggests that a circuit court has restored Boone's privilege to drive or that he possessed a valid driver's license.

The Commonwealth established a *prima facie* case that Boone remained in a habitual offender status, thus "'casting upon [Boone] the burden of going forward with evidence raising a reasonable doubt as to the illegality of his conduct.'" Sears v. Commonwealth, 29 Va. App. 158, 162, 510 S.E.2d 274, 276 (1999) (quoting Mejia v. Commonwealth, 23 Va. App. 173, 177-78,

- 9 -

474 S.E.2d 866, 868 (1996)).  Unrebutted, this evidence was sufficient to convict Boone of driving a motor vehicle after being declared a habitual offender.

For the foregoing reasons, we affirm the trial court.

<u>Affirmed.</u>