UNPUBLISHED

COURT OF APPEALS OF VIRGINIA

Present: Judges Beales, AtLee and Senior Judge Bumgardner
Argued at Norfolk, Virginia

GERARD BUNN

MEMORANDUM OPINION[*] BY
v.      Record No. 0633-16-1      JUDGE RICHARD Y. ATLEE, JR.
MAY 16, 2017

COMMONWEALTH OF VIRGINIA

FROM THE CIRCUIT COURT OF THE CITY OF PORTSMOUTH
James C. Hawks, Judge

W. McMillan Powers, Assistant Public Defender, for appellant.

Benjamin H. Katz, Assistant Attorney General (Mark R. Herring,
Attorney General, on brief), for appellee.

Following a bench trial, a judge of the Circuit Court of the City of Portsmouth convicted

Gerard Bunn of two felonies: hit and run and driving after having been declared a habitual

offender, subsequent offense. He appealed both convictions. On his hit and run conviction,

Bunn concedes he hit, but denies he ran. On his habitual offender conviction, he asserts that the

evidence did not prove that he was a habitual offender, and even if it did, he had no notice of his

status. We are persuaded in part. We affirm Bunn's hit and run conviction, and reverse his

habitual offender conviction.

I.

We view the evidence in the light most favorable to the Commonwealth, which prevailed

at trial. Leigh v. Commonwealth, 192 Va. 583, 587, 66 S.E.2d 586, 589 (1951). On November

22, 2014, twelve-year-old V.M. was sitting alone in her mother's Ford Expedition on the side of

---

[*] Pursuant to Code § 17.1-413, this opinion is not designated for publication.

a road in Portsmouth. The Expedition was parked against traffic, the driver's side nearest to the curb. V.M.'s mother and other family members were inside a nearby house. As Bunn drove his Ford Explorer down the road where the Expedition was parked, he struck the front end and passenger side of the Expedition, damaging it and pushing it forward approximately fifteen feet. After the crash, V.M. got out of the Expedition. She was crying, holding her head, and saying "my head hurt, my head hurt." By this time, V.M.'s mother, grandmother, uncle, and siblings had come out of the house. Bunn got out of his Explorer and shouted "don't call the police, she will be all right." V.M.'s grandmother reported the accident by phone to the police, although she testified that Bunn "was begging me to let him go and don't call the cops." Bunn announced that he was leaving, assuring V.M.'s mother that he would "be right back." V.M.'s mother objected, asking Bunn where he was going, and telling him "you need to stay here, you hit my truck." Some of V.M.'s family members even tried to grab Bunn's keys. However, after several minutes, Bunn "hopped in [his Explorer] and went down the street." While at the scene of the crash, Bunn did not give anyone his name, address, driver's license number, or vehicle registration number, nor did he render any assistance to V.M. Bunn ultimately stopped his Explorer in front of his sister's house, which was located on the same street where the accident occurred, but was not visible from the sight of the crash. It was there that Officer Byers of the Portsmouth Police Department encountered Bunn.

Officer Byers arrived in response to a report of a hit and run, and had a description of the driver allegedly involved. Bunn was standing next to his Explorer when Officer Byers approached. After obtaining Bunn's name and other identifying information, Officer Byers asked Bunn if he had been driving the Explorer recently. Bunn initially denied doing so, but after Officer Byers told Bunn that "he looked like the suspect description given for an accident that had just occurred," Bunn admitted he was the driver. Officer Wright of the Portsmouth

Police Department also spoke with Bunn. Officer Wright discovered that another jurisdiction had an outstanding warrant for Bunn's arrest. After searching Bunn and finding a Virginia identification card but no driver's license, Officer Wright ran Bunn's driver's transcript and criminal history. Eventually, the Commonwealth charged Bunn with two felonies: failure to stop at the scene of an accident "in which a person was killed or injured," in violation of Code § 46.2-894 (commonly referred to as "hit and run"), and driving after having been declared a habitual offender "and while revocation of his driving privilege was in effect," after having previously been convicted of doing so, in violation of Code § 46.2-357.

At trial, the Commonwealth tried to introduce Bunn's DMV transcript into evidence, but Bunn objected, claiming that the transcript was hearsay and that the Commonwealth had not provided him a copy in discovery. When the Commonwealth was unable to confirm that it had provided the transcript in discovery, the trial court sustained Bunn's objection (without specifying the grounds upon which it was doing so). The Commonwealth then introduced certified copies of five Virginia felony convictions, showing that Bunn had been convicted in 2000, 2001, 2001, 2007, and 2010 of driving after having been declared a habitual offender. (The second and third convictions came after pleas of not guilty; the rest came upon guilty pleas.)

The trial court ultimately found Bunn guilty of both felonies. The trial court explained: "He has previously been convicted of this same offense at least five times . . . and his own conduct on this day lends credence to the fact that he knew his status as a habitual offender, and that is the Commonwealth's burden . . . ." The trial court agreed that "[c]ustomarily, [a defendant's habitual offender status] is shown by a properly attested copy of his DMV record introduced at the trial." Because that evidence was not admitted in Bunn's trial, the trial court concluded that "the question then is whether there is other evidence sufficient to establish an

element of the crime beyond a reasonable doubt." In finding that the evidence was sufficient, the trial court viewed "the totality of the circumstances" and found that guilt

> was established by conviction orders properly introduced at the trial that he had five prior convictions of operating a motor vehicle as an habitual offender . . . . So clearly his status as an habitual offender had been established . . . .
>
> It is not as though it is a suspended license for a period of time, this is a status that requires action on his part to go back and get reinstated the privilege to drive, and the question is is there other evidence the Commonwealth can rely upon to say that he had not done that, and I believe that there is.
>
> He had repeatedly pleaded with those on the scene of this accident not to call the police; he fled the scene and cellphones were brought out for them to do just that; and when apprehended, initially he denied being the driver and then admitted the truth when pressed. And now I know that he had a warrant outstanding, and . . . [it] could be argued that perhaps he knew he had a warrant outstanding and that is why he fled. But the fact that he denied being the driver of the vehicle is evidence that he knew he shouldn't be driving. And he did not have a driver's license, all he had was a Virginia ID card.
>
> I believe the sum total of all of that evidence adds up to establish the fact that he was operating a motor vehicle after having been declared a habitual offender at the time of this offense, and I believe that the Commonwealth is entitled to rely upon other evidence to establish this factor, this element, and that to rule otherwise would be to ignore the mountain of circumstantial evidence and require a DMV in each and every case, and I don't think that that is necessary . . . .

The trial court sentenced Bunn to two years in the penitentiary for the hit and run charge, with a year and a half suspended, and three years in the penitentiary for the habitual offender charge, with one year suspended. Bunn appealed.

## II.

"When considering on appeal the sufficiency of the evidence presented below, we 'presume the judgment of the trial court to be correct' and reverse only if the trial court's decision is 'plainly wrong or without evidence to support it.'" Kelly v. Commonwealth, 41

- 4 -

Va. App. 250, 257, 584 S.E.2d 444, 447 (2003) (*en banc*) (quoting Davis v. Commonwealth, 39

Va. App. 96, 99, 570 S.E.2d 875, 876-77 (2002)); see also Code § 8.01-680. Because "we must

consider the evidence in the light most favorable to the Commonwealth," Leigh, 192 Va. at 587,

66 S.E.2d at 589, we "discard the evidence of the accused in conflict with that of the

Commonwealth, and regard as true all the credible evidence favorable to the Commonwealth and

all fair inferences to be drawn therefrom," Wright v. Commonwealth, 196 Va. 132, 137, 82

S.E.2d 603, 606 (1954).

A.

We are satisfied that the evidence proved Bunn guilty of hit and run beyond a reasonable

doubt. Virginia's hit and run statute, Code § 46.2-894, provides, in relevant part:

> The driver of any vehicle involved in an accident in which a person is killed or injured or in which an attended vehicle or other attended property is damaged shall immediately stop as close to the scene of the accident as possible without obstructing traffic, as provided in [Code] § 46.2-888, and report his name, address, driver's license number, and vehicle registration number forthwith to the State Police or local law-enforcement agency, to the person struck and injured if such person appears to be capable of understanding and retaining the information, or to the driver or some other occupant of the vehicle collided with or to the custodian of other damaged property. The driver shall also render reasonable assistance to any person injured in such accident, including taking such injured person to a physician, surgeon, or hospital if it is apparent that medical treatment is necessary or is requested by the injured person.

Here, the issue is not whether an accident occurred, but whether Bunn fulfilled his legal

obligations after the accident.

Bunn offers several unconvincing explanations for his behavior after the accident. He

argues that he did not leave the scene of the accident, rather he simply "removed his vehicle from

obstructing traffic, as he is entitled to do under the clear language of the statute." The evidence

does not support this claim. Bunn's attorney cross-examined V.M.'s mother, asking "[Y]ou

- 5 -

described a scenario where you looked out the window and [Bunn's] car—had replaced where your car should have been?" She responded: "Yes, sir." Her car had been parked along the curb, and no evidence showed it was obstructing traffic. If Bunn's car "replaced" hers, he would not have been obstructing traffic either.

Bunn also protests that his departure from the accident scene "can hardly be characterized as the actions of a man fleeing from the scene of an accident in order to evade detection" because he drove "less than 500 feet down the same street . . . and park[ed] his vehicle at his sister's house." This argument is unpersuasive. Bunn's sister's house is not visible from the site of the accident. His actions immediately following the accident—exhorting witnesses not to call the police, reassuring the gathering crowd that V.M. was not hurt without investigating the matter, and leaving before police arrived at the scene of the accident—clearly support a characterization of "a man fleeing from the scene of an accident in order to evade detection."

Bunn also failed to "report his name, address, driver's license number, and vehicle registration number" to anyone at the scene of the accident, as Code § 46.2-894 requires. "The duty imposed upon the driver of a vehicle involved in an accident is not passive. It requires positive, affirmative action;—that is, to stop and give the aid and information specified." O'Connell v. Commonwealth, 48 Va. App. 719, 733, 634 S.E.2d 379, 386 (2006) (quoting Herchenbach v. Commonwealth, 185 Va. 217, 220, 38 S.E.2d 328, 329 (1946) (discussing Code § 2154(104) (1942), a predecessor to Code § 46.2-894)). Further, upon his initial encounter with Officer Byers, Bunn denied involvement in the accident. At oral argument, Bunn's attorney acknowledged that Bunn had a statutory duty to provide his information at the scene and that there was "no testimony as to whether or not he gave information at the scene." Oral Argument Audio at 4:59 to 5:02 (Mar. 8, 2017). He claimed that Bunn complied, however, because "[t]he people knew who he was. They identified him as Mr. Gerard. They knew him. They knew who

he was, because he lived in the neighborhood." Id. at 5:08 to 5:15. This claim is belied by the evidence. At trial, Bunn's attorney elicited the only evidence of any witness' familiarity with Bunn when the attorney questioned V.M.'s mother: "[D]o you know Mr. Bunn?" She answered "No." He then asked an even broader question: "You never seen [Bunn] before this incident on the 22nd?" V.M.'s mother responded: "No, sir."

Finally, Bunn failed to render assistance to V.M. In his brief, Bunn claims that "upon observing [V.M., he] did not have any reasonable belief that she was injured. The evidence produced at trial indicated [V.M.] was not injured." When she exited the Expedition, V.M. was crying, holding her head, and saying "my head hurt, my head hurt." It is not enough that Bunn believed V.M. was uninjured; his belief must have been reasonable. It was not. At oral argument, Bunn's attorney gave a new explanation for Bunn's failure to provide assistance: Bunn saw that V.M.'s family would provide her any assistance she needed, so there was nothing for him to do. Oral Argument Audio at 2:21 to 2:32 (Mar. 8, 2017) ("He does not render any aid because the family has gathered around the little girl. There's no aid to be rendered by him. She is completely surrounded. They're gonna take care of her or not."). However, after the accident, notwithstanding V.M.'s lamentations and the fact that she was holding her head, Bunn never asked if she was hurt. Instead, he immediately attempted to convince the nearby adults that she was unharmed. Bunn was more concerned with avoiding responsibility for the accident than with confirming the well-being of a child affected by that accident. The presence of others who might render aid did not relieve Bunn of his legal obligation to do so. For all of these reasons, we find that the trial court's decision to convict Bunn of hit and run was supported by the evidence and was not plainly wrong.

B.

The habitual offender designation is a vestige of a now-repealed statutory scheme that addressed unlawful driving recidivism through civil declarations revoking licensure outright.  In 1999, the General Assembly modified this statutory framework, removing the mechanism for declaring future habitual offenders but preserving the process for criminal punishment of existing habitual offenders who drove in violation of their declarations.  See also Varga v. Commonwealth, 260 Va. 547, 549 n.1, 536 S.E.2d 711, 712 n.1 (2000) (observing that "the status of persons declared habitual offenders prior to [1999] was not affected by the repeal"); see generally Lilly v. Commonwealth, 50 Va. App. 174, 179-81, 647 S.E.2d 517, 520-21 (2007) (providing a history of the development and transformation of Virginia's habitual offender laws).

To convict a defendant of driving after having been declared a habitual offender,

> the Commonwealth must prove, *beyond a reasonable doubt*, that the defendant drove a motor vehicle on a public highway while his driving privilege was revoked; that the defendant had been determined or adjudicated an habitual offender; and that the defendant received actual notice of his status as an habitual offender.

Bishop v. Commonwealth, 275 Va. 9, 13, 654 S.E.2d 906, 908 (2008); see also Code § 46.2-357(A) (declaring, in part, that "[i]t shall be unlawful for any person determined or adjudicated an habitual offender to drive any motor vehicle . . . on the highways of the Commonwealth while the revocation of the person's driving privilege remains in effect").  In this instance, subsection (B)(3) of Code § 46.2-357 also required the Commonwealth to prove that Bunn had been convicted previously of driving after having been declared a habitual offender.  Given the prism through which we view evidence on appeal, several elements of the crime are beyond dispute.  Bunn drove, and did so on a public highway.  His five prior convictions of driving after having been declared a habitual offender satisfy the recidivism portion of the statute, and show that at some point in the past, Bunn had been declared a habitual offender.

- 8 -

Bunn cannot claim to be unaware that he had ever been declared a habitual offender, since he was present in court when he was convicted of driving in contravention of such designation and, in three instances, pleaded guilty to such charges. That leaves one element in dispute: whether Bunn's driving occurred "while the revocation of [his] driving privilege remain[ed] in effect." Code § 46.2-357(A).

Our Supreme Court has long held that "the result of the evidence must be to exclude every reasonable hypothesis of innocence and be consistent only with the guilt of the accused." Burton v. Commonwealth, 108 Va. 892, 898, 62 S.E. 376, 379 (1908). And "[w]hen facts are equally susceptible to more than one interpretation, one of which is consistent with the innocence of the accused, the trier of fact cannot arbitrarily adopt an inculpatory interpretation." Case v. Commonwealth, 63 Va. App. 14, 23, 753 S.E.2d 860, 864 (2014) (quoting Moody v. Commonwealth, 28 Va. App. 702, 706, 508 S.E.2d 354, 356 (1998)). The traditional way to prove habitual offender status (*i.e.*, the most straightforward and easiest way to do so) is to offer into evidence a certified copy of the civil declaration of such status, and a contemporaneous DMV abstract showing that the declaration persisted on the date of the offense. However, there is no talismanic requirement that habitual offender status be proven by a specific document (or even any document). "The element of having been declared a habitual offender, like any element of a crime, may be proved by any direct or circumstantial evidence, as long as the evidence as a whole is sufficiently convincing to exclude all reasonable hypotheses of innocence." Boone v. Commonwealth, 63 Va. App. 383, 393, 758 S.E.2d 72, 77 (2014).

Here, the Commonwealth sought to prove Bunn's habitual offender status by way of the circumstantial evidence, including (1) his attempt to avoid responsibility for the car accident, (2) his possession of an identification card rather than an operator's license, and (3) his prior convictions for driving after having been declared a habitual offender. The question is whether

this circumstantial evidence of Bunn's habitual offender status "exclude[d] all reasonable hypotheses of innocence." Id. Even viewing this evidence in the light most favorable to the Commonwealth, we find it insufficient to support the trial court's conclusion.

1.

Bunn clearly attempted, in several different ways, to avoid responsibility for the accident. He minimized the potential injury to the victim without actually investigating her condition, fled the scene before taking the actions required by Code § 46.2-894, and denied being the driver when first questioned by Officer Byers. The trial court cited these facts in support of its finding that Bunn was still a habitual offender on November 22, 2014.

However, the most persuasive explanation for Bunn's attempts to avoid responsibility for the accident is the simplest: he wished to avoid responsibility for the accident. As the trial court acknowledged, there was an additional explanation for Bunn's actions—he had an outstanding warrant. Both the occurrence of the accident and the existence of the outstanding warrant were proven directly at trial through witness testimony. In contrast, attributing Bunn's attempt to avoid responsibility for the accident to guilty knowledge of his habitual offender status required the trial court to assume he was a habitual offender, the very fact in dispute.

Certainly Bunn may have had a variety of reasons for wishing to avoid responsibility for the accident. But of the likely explanations for his behavior (his proven outstanding warrant, his fear of the consequences of the proven hit and run, and the possibility that he was driving in violation of his purported habitual offender status), we find the trial court's focus on his alleged status as a habitual offender unpersuasive.

2.

When Officer Wright searched Bunn, he found only Bunn's Virginia identification card. Because "the evidence and every reasonable inference to be drawn therefrom must be viewed in

- 10 -

the light most favorable to the Commonwealth," Payne v. Commonwealth, 216 Va. 265, 270, 217 S.E.2d 870, 874 (1975), we assume Bunn possessed this identification card because he had no driver's license.  See Code § 46.2-345(A) (authorizing the Virginia Department of Motor Vehicles to issue a "special identification card" to an applicant who has no driver's license).  However, there was no evidence of *why* he was unlicensed.  Certainly his license could have been revoked as a result of a habitual offender declaration.  See Code § 46.2-357.  But it could be that he had successfully petitioned a court for reinstatement of his previously-revoked license, see Code §§ 46.2-358 to -361, but his license had then expired, see Code §§ 46.2-300 & -330.  Or Bunn may not have been relicensed, though his habitual offender status had lapsed.  See infra Part II.B.3 (discussing Davis v. Commonwealth, 12 Va. App. 246, 402 S.E.2d 711 (1991)).  Though Bunn was unlicensed, it would be an impermissible logical leap to presume that he was unlicensed because he had been revoked as a habitual offender.

3.

Lastly, we have Bunn's prior convictions for driving after having been declared a habitual offender.  To find that Bunn's license remained revoked on November 22, 2014 as a result of a habitual offender declaration, the trial court relied in part on these past convictions.  However, without knowing the terms of Bunn's habitual offender revocation, without any evidence of his status with the DMV on the offense date, and without any admission from Bunn as to his status on that date, the evidence of his prior convictions, numerous though they were, was insufficient to prove that Bunn was a habitual offender on November 22, 2014.

Bunn's prior convictions for driving after having been declared a habitual offender show that he had, at some point in the past, been declared a habitual offender.  The trial court also needed to determine, however, whether Bunn remained a habitual offender on the offense date.  Code § 46.2-356 outlines the prohibition against relicensing habitual offenders, stating:

- 11 -

> No license to drive motor vehicles in Virginia shall be issued to any person determined or adjudicated an habitual offender (i) for a period of ten years from the date of any final order of a court entered under this article or if no such order was entered then the notice of the determination by the Commissioner [of the Department of Motor Vehicles] finding the person to be an habitual offender and (ii) until the privilege of the person to drive a motor vehicle in the Commonwealth has been restored by an order of a court entered in a proceeding as provided in this article.

In this regard, the wording of the habitual offender declaration matters.

In Davis v. Commonwealth, 12 Va. App. 246, 402 S.E.2d 711 (1991), the Charlotte County Circuit Court had declared Davis a habitual offender in 1975, stating in its order of revocation that "his privilege to operate a motor vehicle in this state is revoked for a period of ten (10) years from the date of this order." Id. at 247 n.2, 402 S.E.2d at 712 n.2. Police stopped Davis in 1989, and he was ultimately convicted of driving after having been declared a habitual offender. He appealed, arguing that since the language of the order declaring him a habitual offender revoked his privilege to drive for ten years but "contained no provision that the revocation would remain in effect under Code § 46.1-387.9 'until the privilege . . . to operate a motor vehicle in this Commonwealth has been restored[,]' his felony conviction for having driven fourteen years later is invalid." Id. at 248, 402 S.E.2d at 712 (quoting the predecessor statute to Code § 46.2-358) (first alteration in original). A panel of this Court agreed, because the order declaring Davis a habitual offender "contained no provision that the revocation would remain in force until the privilege was restored." Id. at 249, 402 S.E.2d at 713. In other words, the revocation order was written in such a way that the subject of the order could be left in limbo, unrevoked but unrestored. In Bunn's case, the trial court had no way of knowing how his revocation was worded.

In response to Bunn's argument at trial that there was no proof that he was a habitual offender on the offense date, the Commonwealth argued:

- 12 -

> There is a case on point which indicates that when a person pleads guilty to a previous offense of driving as a declared habitual offender, that providing the certified conviction order of said plea and the sentencing order rises to a prima facie case showing that he was in fact habitual at the time of this offense and the burden then shifts to the defendant to show that he has in fact had his privileges reinstated.

We are aware of no such case. In Sears v. Commonwealth, 29 Va. App 158, 510 S.E.2d 274 (1999), a panel of this Court did observe that, in habitual offender cases, the Commonwealth need not "affirmatively establish, as an element of the offense, that [the defendant's] license had *not* been restored." Id. at 161, 510 S.E.2d at 275. An important distinguishing fact in Sears, however, is that he had been prohibited from operating a motor vehicle beginning on November 29, 1984 "for a period of ten (10) years from [such] date . . . *and* until [his] privilege . . . to operate a motor vehicle in this state ha[d] been restored by Order of a Court of Record." Id. (quoting order of revocation) (second and fourth alterations in original). In contrast, the trial court had no evidence of the terms of Bunn's revocation. It had no way of knowing whether the wording of his revocation mirrored the language in Davis's revocation, in Sears's revocation, or said something different entirely.[1]

Habitual offenders must take affirmative steps to become relicensed. The trial court recognized this when it observed that Bunn's case did not involve "a suspended license for a period of time," rather, it involved habitual offender status, "a status that requires action on his part to go back and get reinstated the privilege to drive." See also Code §§ 46.2-358 to -361. Nevertheless, a habitual offender designation is reversible. Given that reversibility (and in some

---

[1] It is not even clear precisely *when* Bunn was declared a habitual offender. The most the trial court could have inferred was that Bunn was a habitual offender between December 24, 1999 and May 25, 2009. These are the respective offense dates corresponding to his earliest (2000) and his latest (2010) convictions for driving after having been declared a habitual offender.

- 13 -

situations such as that in Davis, even automatic expiration), the Commonwealth must prove that habitual offender status persisted on the date the offense is alleged to have occurred.

We agree with the Commonwealth that "[w]hile no single piece of evidence may be sufficient, the 'combined force of many concurrent and related circumstances, each insufficient in itself, may lead a reasonable mind irresistibly to a conclusion.'" Stamper v. Commonwealth, 220 Va. 260, 273, 257 S.E.2d 808, 818 (1979) (quoting Karnes v. Commonwealth, 125 Va. 758, 764, 99 S.E. 562, 564 (1919)). This evidentiary synergy often results in a whole that is greater than the sum of its parts. Not here. In this case, the "concurrent and related circumstances" were insufficient both in isolation and in combination.

> It is not sufficient merely to prove, as the Commonwealth did in this instance, that the defendant was aware that he *had been adjudicated* an habitual offender . . . . Rather, the Commonwealth has the burden to show beyond a reasonable doubt that the defendant drove a motor vehicle "while the revocation of the [defendant's] driving privilege remains in effect."

Rose v. Commonwealth, 265 Va. 430, 435-36, 578 S.E.2d 758, 761 (2003) (quoting Code § 46.2-357) (emphasis added) (second alteration in original). At trial, the Commonwealth failed to present the original order declaring Bunn to be a habitual offender (which would presumably show the length of time the court had ordered that Bunn's habitual offender status would remain in effect—or that its term was indefinite), failed to successfully admit a copy of his DMV transcript that showed his status at the time of the accident, and failed to admit any other evidence showing his revoked license and continued habitual offender status on November 22, 2014. The five conviction orders that were admitted found Bunn to be a habitual offender as of certain dates—the latest of which was more than five years before November 22, 2014, the date on which Bunn's actions occurred that led to the conviction that is before this Court today. In viewing the facts, the trial court, therefore, seems to have "arbitrarily adopt[ed] an inculpatory interpretation." Case, 63 Va. App. at 23, 753 S.E.2d at 864 (quoting Moody, 28 Va. App. at 706,

- 14 -

508 S.E.2d at 356). Such an interpretation was not supported by the evidence, and thus constituted plain error. Therefore, we reverse and dismiss Bunn's conviction for driving after having been declared a habitual offender.[2]

III.

For the reasons stated above, we affirm Bunn's conviction for hit and run, but reverse and dismiss his conviction for driving after having been declared a habitual offender, subsequent offense.

Affirmed in part, reversed and dismissed in part.

---

[2] Because we find that the Commonwealth failed to prove beyond a reasonable doubt that Bunn was a habitual offender on the offense date, we need not address his related assignment of error that he had no notice of his status as a habitual offender on that date. We note, however, that a panel of this Court observed in Claytor v. Commonwealth, 62 Va. App. 644, 653, 751 S.E.2d 686, 690 (2013), that "Reed [v. Commonwealth, 15 Va. App. 467, 424 S.E.2d 718 (1992),] does not require that a driver receive notice of his *current status*, but rather that he receive notice that he *has been declared* an habitual offender."