COURT OF APPEALS OF VIRGINIA

Present:   Judges Petty, Beales and AtLee
Argued at Richmond, Virginia

UNPUBLISHED

CAROLYN LANE-ALVIS

v.        Record No. 0609-17-2

RICHMOND DEPARTMENT
 OF SOCIAL SERVICES

MEMORANDUM OPINION* BY
JUDGE RANDOLPH A. BEALES
MARCH 6, 2018

FROM THE CIRCUIT COURT OF THE CITY OF RICHMOND
Phillip L. Hairston, Judge

Charles R. Samuels for appellant.

Matthew R. Morris, Assistant City Attorney (Brian C. Dent,
Guardian *ad litem* for the infant children; Office of the City Attorney,
on brief), for appellee.

Following a *de novo* hearing, the Circuit Court of the City of Richmond terminated the

residual parental rights of Carolyn Lane-Alvis ("appellant") for two of her three children, K.A.

and C.A.[1]  Appellant timely appealed the circuit court's decision and presents the following

assignments of error arguing that the circuit court erred by:  (i) "ruling the DSS representative

---

* Pursuant to Code § 17.1-413, this opinion is not designated for publication.

[1] We use initials for the children in an attempt to better protect their privacy.  The April 6,
2016 J&DR court order that found the child to be "abused or neglected as defined in [] Code
§ 16.1-228" identified the youngest child as "C.A."  We note, however, that the child's initials
are "C.L." per her birth certificate.  Because appellant has an older child with the initials "C.L.,"
and because the parties referred to the youngest child as "C.A." in their briefs, we refer to the
youngest child as "C.A."
     At the beginning of the *de novo* hearing in the circuit court, the Richmond Department of
Social Services ("RDSS") requested that the court dismiss the petition to terminate appellant's
parental rights for her oldest child.  He was at least fourteen years old on the hearing date, and he
objected to the termination of appellant's parental rights.  Consequently, the circuit court
dismissed RDSS's petition related to the oldest child and proceeded solely on termination
petitions for K.A. and C.A.

was a custodian of the record"; (ii) "ruling that DSS made reasonable efforts to return the child [C.A.] to Ms. Lane-Alvis"; (iii) "ruling that DSS made reasonable efforts to place the children with relatives"; (iv) "ruling that family members were investigated appropriately (especially the Schwartz[es])"; (v) "finding that DSS did not inappropriately transfer their mandate to provide services to Ms. Lane-Alvis to a third party"; and (vi) "overruling Ms. Lane-Alvis'[s] renewed motion to strike." For the reasons that follow, we affirm the circuit court's decision to terminate appellant's residual parental rights for K.A. and C.A.

## I. BACKGROUND

On appeal, when reviewing the termination of a parent's residual parental rights, we are required to view the evidence "in the light most favorable to the prevailing party below and its evidence is afforded all reasonable inferences fairly deducible therefrom." Logan v. Fairfax Cnty. Dep't of Human Dev., 13 Va. App. 123, 128, 409 S.E.2d 460, 463 (1991).

During the *de novo* hearing in the circuit court, Charity Stutzman ("Stutzman"), a RDSS Child Protective Services (CPS) worker testified regarding the documented history of appellant's physical neglect of her minor children. Stutzman testified that in August 2013, Chesterfield County CPS[2] received a referral indicating that appellant and her children were living in hazardous conditions; specifically, "there were cockroaches and mice throughout the residence." Stutzman testified that approximately one month later, in September 2013, K.A., who was then five years old, was admitted to the hospital for asthma symptoms. Stutzman testified that when "[K.A.] was admitted she was . . . filthy, she smelled of tobacco, was not wearing any underwear and was wearing two pairs of pants." Stutzman's affidavit in support of K.A.'s removal petition (the "affidavit"), which was admitted into evidence, stated, "Ms. Alvis had not been utilizing

---

[2] The record showed that appellant's case was initially opened by the Chesterfield County Department of Social Services, and it was subsequently transferred to RDSS in August 2014 after appellant and her children moved to the City of Richmond.

asthma medications for [K.A.] prior to her hospitalization." Following the September 2013 incident, Chesterfield County CPS made an administrative finding of level 2 physical neglect.

Stutzman testified that she conducted a home visit with appellant on August 19, 2014, during which appellant's eyes were dilated. Stutzman conducted a drug test, and appellant tested positive for marijuana despite her claim that she had only taken her prescribed medication. Stutzman testified that she then drafted a safety plan for the children's protection that required appellant to "not be under the influence while caring for her children." Stutzman also referred appellant to the Richmond Behavioral Health Authority (RBHA) for a substance abuse assessment, but appellant did not attend her assessment scheduled for November 26, 2014.

Both Stutzman's testimony and her affidavit showed that appellant and her children moved frequently during 2014. The affidavit stated, "Housing and housing cleanliness have also been issues throughout the case." Stutzman testified that appellant and her children moved in with appellant's boyfriend in mid-October 2014. However, they left on November 3, 2014 following an incident of domestic violence, where the boyfriend "picked her [appellant] up and threw her on the floor and then picked her up and threw her outside against his [the boyfriend's] mother's car."[3] On November 13, 2014 (which was actually after appellant and the children had vacated the premises), RDSS inspected the boyfriend's home. RDSS personnel "observed it to be in deplorable condition. There were dog feces on one of the beds, [and] the toilet was not working and full of feces . . . ."

Stutzman testified that appellant took K.A. to the emergency room on December 3, 2014 because sores on the child's face had become infected. Stutzman testified that, while K.A. was

---

[3] Stutzman testified that she created a second safety plan on October 29, 2014 after a verbal altercation occurred between appellant and the boyfriend while the children were present. That safety plan required that there "be no altercations or intoxication in the presence of the children."

at the hospital, she "smelled of smoke" despite evidence in the record showing that the "child had asthma and should not be around smoke." Stutzman also testified that the child looked as though she had not bathed in days. The affidavit indicated that thereafter, "[d]ue to the on-going concerns regarding domestic violence, personal hygiene, and housing stability, combined with minimal progress in services, the children were removed from the home" on December 3, 2014.

Ebony Malone ("Malone"), the foster care social worker assigned to appellant's children, testified that the initial court-approved foster care plan required appellant, among other conditions, to "remain substance free." Despite this requirement, the record reflects that appellant tested positive for marijuana on August 17, 2015 and again on February 22, 2016. Both of appellant's positive drug tests occurred while appellant was pregnant with C.A.,[4] and the February 22, 2016 drug test occurred only two days before appellant gave birth to her. The record reflects that on February 24, 2016, the day C.A. was born, both appellant and the baby tested positive for marijuana, and C.A. was then placed in RDSS's custody directly from the hospital.

Malone testified about the services that RDSS provided to appellant in order to try to help toward reunification with her children – as well as RDSS's efforts to investigate appellant's relatives as potential placement options for the children. In addition to the two safety plans drafted by Stutzman, RDSS referred appellant to Stop Child Abuse Now (SCAN) for parenting classes and to RBHA for substance abuse treatment.[5] The record also reflects that appellant was receiving mental health treatment through a private provider – Spectrum Transformation Group –

---

[4] The record reflects that appellant conceived C.A. with a man that appellant could not identify after K.A. had already been placed in foster care.

[5] Malone testified that appellant worked with RBHA "for a short time" on her substance abuse issues, but, by January 2016, appellant "had disengaged in [substance abuse treatment] services with RBHA and had not followed through with that referral."

when her case was transferred to RDSS, and RDSS asked her to continue that treatment. Malone testified that RDSS engaged with appellant's family and her mental health provider through group meetings that occurred every 90 days to coordinate efforts to support appellant.

Malone testified that RDSS investigated the possibility of placing K.A. and C.A. with appellant's brothers, but neither brother was a viable option.[6] Malone also investigated two extended family members, Will and Robin Schwartz, appellant's maternal aunt and uncle (the children's great-aunt and great-uncle) to determine if they were a potential placement option for the children. Malone testified that she made numerous attempts to contact the Schwartzes by telephone; however, she only succeeded in speaking with Robin Schwartz on one occasion. After learning that appellant's children were in foster care, the Schwartzes never contacted RDSS, nor did they attend any RDSS-led group meetings or the relevant court hearings, and they did not submit a custody petition.

Regarding appellant's mental health, Dr. Craig King testified before the circuit court that he conducted a psychological evaluation of appellant on January 26, 2016. Dr. King opined that appellant lacked the ability to adequately parent K.A. and C.A. His evaluation report stated:

> [I]t is opined to a reasonable degree of psychological certainty that Ms. Lane-Alvis is not capable of making sound decisions regarding the welfare of her children, nor is she capable of adequately meeting her children's needs. . . . Ms. Lane-Alvis's mental health related problems and intellectual disability make it very difficult for her to meet her own needs, let alone adequately attend to her children's special needs.

---

[6] RDSS did not seriously consider Brandon Lane as a placement option because he was reincarcerated while the case was in the J&DR court. Adam Lane was also not seriously considered because of his two previous criminal convictions for assault and battery of a family member.

At the conclusion of the hearing, the circuit court terminated appellant's residual parental rights for K.A. under Code § 16.1-283(B)(1), (B)(2), and (C)(2). The circuit court terminated appellant's residual parental rights for C.A. under Code § 16.1-283(B)(1) and (B)(2).

## II. ANALYSIS

### A. Standard of Review

In her first assignment of error, appellant challenges an evidentiary ruling of the circuit court, and we "review evidentiary rulings under an abuse of discretion standard." Campos v. Commonwealth, 67 Va. App. 690, 702, 800 S.E.2d 174, 180 (2017) (quoting Boone v. Commonwealth, 63 Va. App. 383, 388, 758 S.E.2d 72, 75 (2014)). "Under this deferential standard, a 'trial judge's ruling will not be reversed simply because an appellate court disagrees;' only in those cases where 'reasonable jurists could not differ' has an abuse of discretion occurred." Id. (quoting Thomas v. Commonwealth, 44 Va. App. 741, 753, 607 S.E.2d 738, 743, adopted upon reh'g en banc, 45 Va. App. 811, 613 S.E.2d 870 (2005)).

In her remaining assignments of error, appellant challenges various aspects of the circuit court's decision to terminate her residual parental rights. When reviewing such a decision,

> [T]his Court presumes that the trial court thoroughly weighed all the evidence, considered the statutory requirements, and made its determination based on the child's best interests. The circuit court has broad discretion in making the decisions necessary to guard and to foster a child's best interests. Therefore, in a case involving termination of parental rights, [t]he trial court's judgment, when based on evidence heard *ore tenus*, will not be disturbed on appeal unless plainly wrong or without evidence to support it.

Eaton v. Wash. Cnty. Dep't of Soc. Servs., 66 Va. App. 317, 324, 785 S.E.2d 231, 235 (2016) (internal quotations and citations omitted) (second alteration in original).

### B. Accepting a CPS Worker as a Custodian of the Record

During the *de novo* hearing, appellant's counsel objected on hearsay grounds to the admission of K.A.'s initial removal petition and the attached affidavit, both of which were

drafted by Stutzman. Appellant's counsel argued that Stutzman was not a custodian of the records for RDSS. However, the circuit court accepted Stutzman as a custodian of the record based upon her level of access to the RDSS records (Stutzman testified that she had access to RDSS records that other users did not possess, she could create her own records, and she could review records made by other users).

The foundation that is required to admit a business record, such as the RDSS record in this case, can be provided through witness testimony. See Va. R. Evid. 2:803(6), 2:902(6); see also Lee v. Commonwealth, 28 Va. App. 571, 577, 507 S.E.2d 629, 632 (1998) (stating that a witness who is not the custodian of the records *per se* can authenticate business records if the witness has "knowledge of the records and had access to them"). Consequently, the circuit court did not abuse its discretion in admitting the business records, given Stutzman's familiarity with the records and her access to them.[7]

## C. RDSS's Efforts to Return C.A. to Appellant

Appellant argues that the circuit court erred in determining that RDSS made "reasonable efforts to return the child" to her.

---

[7] The trial court initially admitted the removal petition and the attached affidavit as a business record and labeled it as "City's Exhibit 1." Later, a certified J&DR court order that incorporated the removal petition and its affidavit was added to the record as "City's Corrected Exhibit 1." See Code § 8.01-389(A) ("The records of any judicial proceeding and any other official records of any court of this Commonwealth shall be received as prima facie evidence provided that such records are certified by the clerk of the court where preserved to be a true record."); see also Code § 8.01-391(c) ("If any court or clerk's office of a court of this Commonwealth . . . has copied any record made in the performance of its official duties, such copy shall be admissible into evidence as the original, whether the original is in existence or not, provided that such copy is authenticated as a true copy by a clerk or deputy clerk of such court."). The "City's Corrected Exhibit 1," the J&DR court order, was certified under Code § 8.01-391(c). Therefore, even assuming the trial court erred in finding that the CPS worker was a custodian of the record (which we do not find), the petition and its attached affidavit, which were incorporated into that order, were nevertheless admissible and properly admitted to the record.

- 7 -

The residual parental rights of a parent whose child is found by a court to be "neglected or abused and placed in foster care" may be terminated if clear and convincing evidence shows that it is in the child's best interests and:

> 1. The neglect or abuse suffered by such child presented a serious and substantial threat to his life, health or development; and
>
> 2. It is not reasonably likely that the conditions which resulted in such neglect or abuse can be substantially corrected or eliminated so as to allow the child's safe return to his parent or parents within a reasonable period of time.

Code § 16.1-283(B). In making this determination, the court *shall* consider the efforts made to rehabilitate the parent prior to the child's initial placement in foster care. Code § 16.1-283(B)(2).

Here, the evidence showed that appellant received numerous rehabilitative services, including mental health treatment, a referral to parenting classes, a referral to a substance abuse assessment, and two safety plans. While these services were provided before and during K.A.'s foster care placement, the circuit court was also able to consider these services in relation to C.A.'s foster care placement and in the termination of appellant's parental rights to both children. See Code § 16.1-283(B)(2). Judge Hairston stated for the record, "The Court is satisfied that the department of social services made reasonable efforts to address the many issues that Ms. Alvis faced." However, the circuit court also considered other evidence, "including the fact that she [appellant] was using marijuana during the time two of her children were in foster care and at the time that she was pregnant with [C.A.]." Therefore, because RDSS was the prevailing party in the circuit court and we must view the evidence in the light most favorable to it, we cannot say that the circuit court was plainly wrong in finding that RDSS made reasonable efforts to rehabilitate appellant prior to terminating her residual parental rights.

D.  RDSS's Investigation of Relatives and Attempts to Place the Children with Them

We address the third and fourth assignments of error together because both address the circuit court's factual findings related to appellant's relatives.

Before a court considers custody and termination of parental rights under Code § 16.1-283(A), "the Department has a duty to produce sufficient evidence so that the court may properly determine whether there are relatives willing and suitable to take custody of the child, and to consider such relatives in comparison to other placement options." Logan, 13 Va. App. at 131, 409 S.E.2d at 465.  In Sauer v. Franklin Cnty. Dep't of Soc. Servs., 18 Va. App. 769, 771, 446 S.E.2d 640, 641 (1994) (emphasis added), this Court further analyzed an agency's duty to investigate relatives and stated, "Before *termination of parental rights* by the court, the agency seeking termination has an affirmative duty to investigate all reasonable options for placement with *immediate* relatives."  This requirement extends to grandparents.  Id. at 772, 446 S.E.2d at 642; see Code § 16.1-283(A).  However, the agency seeking termination does not have a duty "in every case to investigate the home of every relative of the children, however remote, as a potential placement."  Sauer, 18 Va. App. at 771, 446 S.E.2d at 642.  Furthermore, "[n]othing in the statute or case law suggests that DSS has an affirmative duty to conduct a home study." Brown v. Spotsylvania Cnty. Dep't of Soc. Servs., 43 Va. App. 205, 217-18, 597 S.E.2d 214, 220 (2004).

Appellant argues that RDSS failed to investigate three of her relatives as placement options for her children:  Brandon Lane, Robin Schwartz, and Will Schwartz.  Brandon Lane was reincarcerated while this matter was in the J&DR court, and appellant argues that "no evidence was presented he was not an appropriate placement upon his release."  Regarding the Schwartzes, appellant argues that RDSS failed to fulfill its duty to investigate them, despite their apparent lack of desire to be considered as a potential placement for the children.

Appellant argues that this Court's opinion in Sauer supports the reversal of the circuit court's decision. In Sauer, this Court reversed the termination of a father's parental rights where the evidence showed that the agency seeking termination did not investigate the children's grandmother as a placement option. While the paternal grandmother did not present herself as a possible placement option, this Court found that her failure to present herself to the agency or the court was immaterial; rather, "[t]he Department had the duty to investigate her for that purpose; she did not have a duty to present herself as an alternative." Sauer, 18 Va. App. at 772, 446 S.E.2d at 642.

The facts in this case, however, are quite different from those in Sauer. In Sauer, we stated that such a placement with the grandmother was "obviously a potential option for placement of the children contemplated by Code § 16.1-283(A) . . . ." Id. In the current matter, unlike in Sauer, the Schwartzes are not K.A.'s or C.A.'s grandparents or immediate family members. They are the children's great-aunt and great-uncle, and, therefore, they are not immediate relatives. Furthermore, we note that the Schwartzes never became engaged at all in the placement process or in any planning for the children's future – despite the foster care social worker Ebony Malone's numerous attempts to contact them. Also, while appellant argues that RDSS failed to conduct a home visit of the Schwartz residence, despite the Schwartzes' showing no interest in the children's placement with them, appellant acknowledges that no binding precedent required one. See Brown, 43 Va. App. at 217-18, 597 S.E.2d at 220. In fact, in Sauer, we stated, "We do not suggest that the Department has a duty in every case to investigate the home of every relative of the children, however remote, as a potential placement." 18 Va. App. at 771, 446 S.E.2d at 642.

In short, we cannot say that RDSS was reasonably required to consider a family member as a placement option after that individual was incarcerated. We also cannot say that RDSS was

required to make further efforts to investigate *non-immediate* family members, especially when the trial court could have reasonably inferred that the Schwartzes did not want to serve as a placement for the children. Consequently, we cannot conclude that the circuit court was plainly wrong in finding that RDSS made reasonable efforts to investigate appellant's relatives, nor can we conclude that the circuit court was plainly wrong in finding that RDSS made reasonable efforts to place the children with relatives.

### E. Appellant's Private Mental Health Provider

Appellant's fifth assignment of error alleges that RDSS officials "inappropriately transfer[red] their mandate to provide services to Ms. Lane-Alvis to a third party." However, Code § 16.1-283 contemplates the provision of some services by private entities. See Code § 16.1-283(B)(2) ("[T]he court shall take into consideration the efforts made to rehabilitate the parent or parents by any public or *private* social, medical, mental health or other rehabilitative agencies prior to the child's initial placement in foster care." (emphasis added)). Therefore, we find no error in the circuit court's ruling.

### F. The Overruling of Appellant's Renewed Motion to Strike

In arguing her final assignment of error, appellant adopts her previous arguments from assignments of error one through five. Viewing the evidence in the light most favorable to RDSS, as we must because it was the prevailing party in the circuit court, we find that the circuit court had sufficient credible evidence to deny appellant's renewed motion to strike. Dr. King's testimony and report taken by themselves indicated that "Ms. Lane-Alvis's mental health related problems and intellectual disability make it very difficult for her to meet her own needs, let alone adequately attend to her children's special needs." In addition, Stutzman's testimony and affidavit established that appellant had a history of physical neglect of her children, that the children's environment and appellant's actions presented "serious and substantial" threats to the

- 11 -

children, and that these conditions could not reasonably be "corrected or eliminated so as to allow" the children's safe return within a reasonable period of time. Code § 16.1-283(B)(1)-(2). Likewise, Malone's testimony showed that appellant was "unwilling or unable . . . to remedy substantially the conditions which led to or required continuation of the child's foster care placement" notwithstanding the reasonable and appropriate efforts of RDSS. Code § 16.1-283(C)(2). Consequently, the circuit court did not err in denying appellant's renewed motion to strike.

### III. CONCLUSION

In summary, the circuit court did not abuse its discretion in admitting evidence over appellant's objections because that evidence was an admissible business record. Furthermore, there was credible evidence before the circuit court that RDSS made reasonable efforts to provide services to appellant to help her become reunited with her children, and RDSS had made reasonable efforts to investigate appellant's relatives in an attempt to place the children with relatives. Furthermore, RDSS did not unlawfully transfer its mandate to provide services to appellant to a third party because Code § 16.1-283 permits the use of private service providers for certain functions, such as attempting to address a parent's mental health problems. Finally, the circuit court did not err by failing to grant appellant's renewed motion to strike. For all of these reasons, we affirm the circuit court.

<u>Affirmed.</u>