COURT OF APPEALS OF VIRGINIA

UNPUBLISHED

Present:   Judges Huff, Russell and Athey
Argued at Fredericksburg, Virginia


TORRE LAMAR MIDDLETON
                                              MEMORANDUM OPINION[*] BY
v.        Record No. 0668-18-4              JUDGE WESLEY G. RUSSELL, JR.
                                                    MARCH 3, 2020
COMMONWEALTH OF VIRGINIA


FROM THE CIRCUIT COURT OF PRINCE WILLIAM COUNTY
Craig D. Johnston, Judge

Christopher Feldmann for appellant.

Leanna C. Minix, Assistant Attorney General (Mark R. Herring,
Attorney General, on brief), for appellees.


Following a jury trial, Torre Lamar Middleton ("appellant") was convicted of five counts

of possession of a controlled substance with intent to distribute, second or subsequent offense.

On appeal, he seeks reversal of the convictions on the grounds that the trial court erred in

refusing his proffered jury instruction on entrapment. For the reasons that follow, we conclude

that the trial court did not err in refusing the entrapment instruction. Accordingly, we affirm the

judgment of the trial court.

BACKGROUND

In May 2016, appellant was arrested on unrelated narcotics charges. In August 2016,

appellant was being held without bond on those charges and decided to pursue becoming a

confidential informant. On August 23, at appellant's request, appellant and his attorney at the

time, Jeremiah Adair, met with Detectives Whetsell and Cieslinski at the Prince William County

_____

[*] Pursuant to Code § 17.1-413, this opinion is not designated for publication.

Adult Detention Center to discuss appellant becoming a confidential informant. Ultimately, the parties agreed that appellant would become a confidential informant and participate in a controlled buy with a higher-level distributor known as "Johnny." Appellant signed a confidential informant agreement which, in pertinent part, forbade him from possessing, buying, or selling drugs without police approval and supervision. The agreement expressly provided that appellant agreed not to do the following:

> A. Sell or deliver any controlled substance, dangerous drug, marijuana, or cause the sale of such substance to be sold or delivered to any person or group of persons.

> B. Possess or deliver any controlled substance, dangerous drug, marijuana, or cause the possession or delivery of such substance to any person: except under the strict supervision of a Detective of the Vice and Narcotics Bureau for the furtherance of a criminal investigation, during the Detective's performance of official duties.

On September 19, 2016, appellant was released on bond. Shortly thereafter, Detective Whetsell learned that, in violation of the signed agreement, appellant was selling narcotics. Police officers utilized a second confidential informant, R.W., to initiate controlled buys from appellant: on September 29, appellant sold R.W. a gram of heroin and a gram of crack cocaine; on October 4, appellant sold R.W. one gram of heroin and slightly less than one gram of crack cocaine; and on October 11, appellant sold R.W. approximately one-half gram of crack cocaine. Each of these transactions was surreptitiously recorded.

Appellant was indicted for each sale of heroin or cocaine individually, resulting in five counts of possession with intent to distribute, second or subsequent offense. At trial, appellant and the Commonwealth introduced competing versions of the conversations that occurred when appellant agreed to serve as a confidential informant.

Appellant testified that the conversation began with Detective Whetsell questioning him about a man named "Johnny."[1] Appellant explained that he knew Johnny because Johnny had come to the barbershop where appellant worked. However, appellant added that he had not purchased drugs from Johnny previously. Detective Whetsell identified Johnny as a "big dog" in the local drug scene and asked appellant whether he could set up a buy for multiple ounces of a controlled substance from Johnny. Appellant responded that he likely could and signed the agreement. Appellant testified that during this discussion, the following exchange occurred:

> Actually, I told them, I said, "Well, I lost my place of living when I got incarcerated." . . . I said, "I don't have nowhere to go." He said basically, "Do what you got to do." I'm like, "Well, I [would] have to sell drugs. There's no way I can get out and not sell drugs." I told them I had a lot of clientele[.] I had to do this. He was like basically do what you need to do, you know what I'm saying.

Appellant reiterated that Detective Whetsell told him to do what he needed to do and that the police would give appellant "two to three months" to "get back into things" and "get Johnny."

Appellant testified that, upon being released on bond, he began trying to reintegrate into the local drug scene. On three occasions he purchased drugs from Johnny via Johnny's "runner," Michelle. According to appellant, he later sold these drugs to R.W., giving rise to the convictions he challenges on appeal. Appellant explained that he believed that he was "working" for the Commonwealth as an informant during his purchases from Michelle/Johnny.

Appellant stated that Johnny was suspicious that appellant was acting as a confidential informant because he knew about his prior arrest and incarceration. He testified that, because of Johnny's suspicion, he was passing all of the money he received from selling the drugs directly

---

[1] At first, appellant said that he did not know a "Johnny." After being shown a picture of the man identified as "Johnny," appellant recognized him as a person he knew as "JB." For ease of reference, we refer to him as "Johnny."

back to Johnny.  Appellant testified that he was doing this to build trust with Johnny, so that he eventually could buy larger quantities directly from Johnny, as Detectives Whetsell and Cieslinski requested.  He explained:

> I told them the only way I could get in good [with Johnny] was if I sold drugs.  And I told them I don't have an address.  I don't have nowhere to go, and they was like go and do what you need to do, you know what I'm saying.  Don't like get caught selling drugs and I was like but I have to and they laid me the bond to get out.

Appellant's attorney for his prior charges also testified at trial.  Adair was present for the meeting where the confidential informant agreement was discussed and signed.  Adair confirmed that the conversation focused on assisting the police with their investigation of Johnny.  He testified that there was "sort of a background understanding that there would be time for" appellant to "reintegrate and come up with something that the police would find helpful."  He recalled that appellant told the detectives that he had just been arrested in a "very public way" so people would be suspicious of his getting out of jail on bond.  Adair testified that appellant told the detectives that they would "need to bear with [him] because [he is] going to seem kind of illegitimate right after getting out of jail after that public arrest."  Adair stated that the detectives did not tear up the agreement and told appellant that they understood and would give him time to reintegrate.  However, Adair also testified that the detectives did not authorize appellant to buy or sell controlled substances without police involvement.

Detectives Whetsell and Cieslinski both testified that the conversation centered on an investigation into Johnny and his associate Michelle.  Detective Whetsell recalled that appellant told the detectives that it would take some time to be able to set up controlled buys of multiple ounces with Johnny.  However, Detective Whetsell testified that he never allows "people to sell drugs to reintegrate into the drug world prior to actually starting work as a confidential informant."  Instead, Detective Whetsell testified that he expects individuals to reintegrate solely

by "making conversation with their old supplier." Both detectives testified that appellant was not given permission to sell controlled substances or otherwise violate his confidential informant agreement. Detective Whetsell testified that appellant never told him that he would need three months to sell drugs on his own to integrate back with his supplier. Detective Whetsell further stated that if appellant had told him this, he would not have been "okay" with that and would have explained to appellant "that by [the written agreement] that was not allowed."

At the conclusion of the evidence, appellant offered Instruction N, the Virginia Model Jury Instruction on entrapment. Instruction N stated that:

> Entrapment is the origination and planning of an offense by an officer of the law and his procurement of its commission by one who would not have committed it except for the trickery, persuasion or fraud of the officer. Where a person intends to and does commit the crime, the fact that officers of the law provided a favorable opportunity for, aided or encouraged the commission of the offense is not entrapment.
>
> If you believe:
>
> (1) That the defendant had no previous intent or purpose to commit *the* crime; and
>
> (2) *That an officer of the law, directly or through his agents, originated in the mind of the defendant the idea to commit the crime*; and
>
> (3) That an officer of the law, directly or through his agents, caused the defendant to commit *the* crime by trickery, persuasion or fraud
>
> then you shall find the defendant not guilty even though you may believe from the evidence that he consented to the commission of the crime.

(Emphasis added).

Appellant contended that the entrapment instruction was proper because Detectives Whetsell and Cieslinski implicitly had agreed to allow him to sell drugs in order to reintegrate into the local drug culture and regain the trust of Johnny so that he could conduct a controlled

buy of at least one ounce. The Commonwealth opposed the instruction, arguing that there was insufficient evidence to support the instruction. The trial court denied Instruction N, finding that, even viewed in the light most favorable to appellant, the evidence did not support giving the instruction. The trial court elaborated on its reasoning, stating that appellant's multiple drug sales were:

> not the crime that law enforcement had in mind that he would . . . commit. The crime that they had in mind was he was going to go out and buy drugs. And I think [viewing] the evidence in the light most favorable to [appellant,] . . . there needs to be some scintilla [of evidence] that the agents of the Commonwealth were the ones who originated the idea that he should go out and sell[.] I find there's no scintilla of evidence that they originated that idea.

The trial court further found that the detectives did not utilize trickery, persuasion, or fraud to entice appellant into committing the charged offenses.

Appellant was subsequently found guilty by the jury on each charge. He appeals, challenging only the refusal of the trial court to give his proposed instruction on entrapment.

## ANALYSIS

### I. Standard of Review

The decision of whether to grant or refuse a proffered jury instruction "rests within the sound discretion of the trial court." Sarafin v. Commonwealth, 288 Va. 320, 325 (2014). Accordingly, we review a trial court's decision under the deferential abuse of discretion standard. Witherow v. Commonwealth, 65 Va. App. 557, 565 (2015). In conducting such a review, an appellate court's "sole responsibility . . . is to see that the law has been clearly stated and that the instructions cover all issues which the evidence fairly raises." Molina v. Commonwealth, 272 Va. 666, 672 (2006) (quoting Swisher v. Swisher, 223 Va. 499, 503 (1982)).

The fact that an instruction "correctly states the law" does not require that it be given. Woolridge v. Commonwealth, 29 Va. App. 339, 348 (1999) (quoting Hatcher v. Commonwealth, 218 Va. 811, 813-14 (1978)). In addition to correctly stating the law, the instruction must have a basis in the evidence, with a party only being entitled to instructions "that are supported by [more than a scintilla of] evidence." Witherow, 65 Va. App. at 565 (alteration in original) (quoting Eaton v. Commonwealth, 240 Va. 236, 255 (1990)). "The weight of the credible evidence that will amount to more than a mere scintilla . . . is a matter to be resolved on a case-by-case basis." Mayberry v. Commonwealth, 66 Va. App. 93, 101 (2016) (ellipsis in original) (quoting Woolridge, 29 Va. App. at 348). In making that determination, we view the evidence in the light most favorable to the proponent of the instruction, id., and if, when the evidence is viewed in that light, "a proffered instruction finds any support in credible evidence, its refusal is reversible error." Davis v. Commonwealth, 68 Va. App. 725, 731 (2018) (quoting McClung v. Commonwealth, 215 Va. 654, 657 (1975)).

## II. Appellant's Evidence

Viewed in the light most favorable to appellant, the evidence establishes that, after learning of appellant's interest in serving as a confidential informant, detectives originated the idea that appellant would purchase controlled substances from Johnny or his runner, Michelle, as a part of a sting operation. Appellant was willing to make such purchases and entered into the written confidential informant agreement, which included the express prohibitions on purchases or sales of drugs outside the supervision of the police. Crediting appellant's testimony, the evidence establishes that, after agreeing to serve in this role, appellant informed the detectives that "the only way I could get in good [with Johnny] was if I sold drugs" and that the detectives responded that appellant "go and do what you need to do."

- 7 -

In arguing against the giving of the instruction below, the Commonwealth attacked the believability of appellant's testimony regarding his potential sale of drugs, stressing it was wholly inconsistent with the written agreement appellant had signed and was denied by the detectives. Furthermore, appellant's prior counsel, who was present for the conversation, testified that the detectives never gave appellant permission to sell drugs.

Although it is true that these pieces of evidence seriously call into question appellant's version of events, a determination that appellant's version was false requires a weighing of the competing evidence. Such weighing is the ultimate function of the jury as factfinder *after it has been instructed*, and therefore, is inappropriate in determining whether an instruction should be given.[2] Viewing the evidence in the light most favorable to appellant as the proponent of the instruction, Mayberry, 66 Va. App. at 101, appellant's version of his conversation with the detectives must be accepted with all contradictory pieces of evidence rejected.

III. Applicability of the Instruction Given the Evidence

Neither party challenges that appellant's proposed entrapment instruction constituted a correct statement of the law of entrapment. Accordingly, the question was and remains whether the evidence, viewed in the proper light, supported the elements specified in that instruction. If the evidence did not support all of the elements of entrapment as set forth in the instruction, the trial court was correct in refusing the instruction. See Rose v. Jaques, 268 Va. 137, 150 (2004) (recognizing that for a party to be entitled to an instruction there must be "more than a scintilla of evidence produced on each of the elements" of the instruction).

---

[2] By summarizing the Commonwealth's argument in the proceedings below, we do not suggest that the trial court applied an incorrect standard. To the contrary, the trial court explicitly referenced the correct standard, stating that it was refusing the instruction after viewing the evidence in the light most favorable to appellant.

"Entrapment is the conception and planning of an offense by an officer, and his procurement of its commission by one who would not have perpetrated it except for the trickery, persuasion, or fraud of the officer." McCoy v. Commonwealth, 9 Va. App. 227, 231 (1989) (quoting Stamper v. Commonwealth, 228 Va. 707, 715 (1985)). If the conception and planning of the offense originates with a defendant, then no entrapment has occurred. Id.

The origination element of entrapment was addressed by the portion of appellant's proposed instruction that provided that the evidence had to establish that "an officer of the law, directly or through his agents, originated in the mind of the defendant the idea to commit *the* crime[.]" (Emphasis added). In rejecting the instruction, the trial court found that no evidence was produced to establish this element. The trial court stated that, even viewing the "evidence in the light most favorable to" appellant, there was "no scintilla of evidence that [the detectives] originated th[e] idea" of appellant selling drugs; that idea originated with appellant.

We agree with the trial court that the evidence, viewed in the light most favorable to appellant, establishes that it was appellant, and not law enforcement, who originated the idea that appellant would sell drugs. Accepting appellant's testimony as true confirms that the police *never* asked appellant to sell drugs and that the idea that he would sell drugs came from appellant. In fact, appellant conceded at oral argument in this Court that he was the person who first raised the prospect of his selling drugs, responding in the affirmative when asked if the "first person to raise [appellant] selling drugs was not the police, it was" appellant. Accordingly, there is no evidence from which a rational factfinder could conclude that law enforcement originated the idea of appellant selling drugs.

This is fatal to appellant's entrapment claim. Both the law of entrapment and the jury instruction offered by appellant require that the idea that appellant "commit *the* crime" originate with law enforcement. (Emphasis added). The instruction's use of the definite article "the"

- 9 -

limited the scope of the origination element to those crimes for which appellant was on trial, namely the sale of drugs to R.W., and not other crimes that occurred or possibly could occur. Grafmuller v. Commonwealth, 57 Va. App. 58, 65 (2010) (recognizing that "[t]he word 'the' is used grammatically . . . as a definite article—a word that, when used before a noun, specifies or particularizes the meaning of the noun that follows, as opposed to the indefinite article 'a'"); see also Addison v. Jurgelsky, 281 Va. 205, 208 (2011) (recognizing that the use of "the" as a definite article limits the scope of the object while use of the indefinite articles "a" or "any" is more expansive).

The conclusion that entrapment requires law enforcement to have originated the idea of the crime for which the defendant is charged as opposed to some other criminal offense flows not just from rules of grammar and usage, but from common sense. Law enforcement's entrapment of a citizen by enticing him to commit a particular crime he was not predisposed to commit does not give that citizen a license to commit other crimes. The protection afforded by an entrapment defense is coextensive with the crime or crimes police entice a citizen to commit and those that are factually necessary components of any such crime or crimes.[3]

The evidence here established that law enforcement originated the idea that appellant commit a particular crime—possession of a controlled substance that he was to purchase from Johnny or Johnny's associate. Nothing about the commission of that crime required appellant to sell drugs; the subsequent sale of drugs is not an element of simple possession. Even viewed in the light most favorable to appellant, nothing in the evidence suggests that, in requesting that

---

[3] To hold otherwise would give a citizen who was enticed by police to commit a particular crime *carte blanche* to commit other crimes never mentioned or dreamt of by the police. The law of entrapment does not countenance such a result. Cf. United States v. Vaughn, 80 F.3d 549, 552 (D.C. Cir. 1996) (rejecting as "absurd" the argument "that once a defendant is entrapped into committing one offense, he enjoys *carte blanche* to commit an infinite number of later offenses").

appellant purchase drugs from Johnny, the detectives requested, coerced, or did anything else to entice appellant to engage in drug distribution, a distinct criminal act.  Because the idea that appellant sell drugs did not originate with the detectives, the evidence did not support the origination element of an entrapment defense.  See Huffman v. Commonwealth, 222 Va. 823, 828 (1981) ("When the criminal design originates in the mind of the accused and, thereafter, the Commonwealth does no more than afford an opportunity for the commission of the crime, the defense of entrapment does not lie.").

Acknowledging that his own evidence establishes that he first raised the idea that he would commit the crime of distribution, appellant attempts to shift the focus from whether law enforcement originated the idea of "the crime."  Specifically, he argues the focus should be on whether the police implanted in his mind the idea that "selling drugs . . . would be allowed" when they acquiesced in his stated plan to sell drugs.  Appellant contends that, although the idea to sell drugs was his, the fact that detectives said "do what you need to do" in response to his stated plan to sell drugs constitutes the "trickery" that supports an entrapment defense.

This argument is inconsistent with the language of the instruction that appellant propounded, which expressly focused the origination inquiry on "the crime" charged and not something else.  Furthermore, even if we assume that the alleged statements of the detectives acquiesced in appellant's plan to sell drugs and constituted "trickery," that does not lead to the conclusion that appellant was entitled to the entrapment instruction.  The "trickery, persuasion or fraud" element of the entrapment defense is a distinct element, separate and apart from the origination element.[4]  Accordingly, even if the detectives' statements are taken as satisfying the

---

[4] Contrary to appellant's arguments and the position taken by the dissent, the detectives' purported acquiescence to the plan to sell drugs *originated* by appellant cannot satisfy the origination element.  The origination element of an entrapment defense would not have been satisfied even if the police affirmatively and unequivocally had blessed appellant's plan to sell

"trickery, persuasion or fraud" element, the evidence still did not entitle appellant to the instruction because no evidence supports the origination element.

Here, as appellant has acknowledged, his own evidence establishes that the idea for him to sell drugs originated with him and not the detectives.[5] Thus, the trial court did not err in

_____

drugs because the plan to do so still would have *originated* with appellant. That such conduct may give rise to fairness concerns and other potential defenses, see, e.g., Davis, 68 Va. App. at 731 (recognizing a due process defense "based on the premise that 'convicting an individual who has reasonably relied on the advice of a state actor is so fundamentally unfair as to raise due process concerns[]'" (quoting Miller v. Commonwealth, 25 Va. App. 727, 739 (1997))), does not mean that the evidence supports the origination element of an entrapment defense. To hold otherwise is to conclude that the origination element is not truly a requirement of the entrapment defense.

Although we cite to Davis to demonstrate but one example of other defenses that might be available in situations similar to appellant's, the dissent laments that the Davis due process defense "is unlikely to truly be available" in situations such as this. See infra, at 17 n.9. Ultimately, this is beside the point. Even assuming that no other defenses cover this situation, the lack of another defense would not change the elements necessary to establish the entrapment defense. Because the evidence viewed in the light most favorable to appellant did not support the elements of the entrapment defense, appellant was not entitled to an entrapment instruction regardless of whether or not other defenses were available.

[5] The dissent expressly agrees that the evidence viewed in the light most favorable to appellant establishes that "appellant originated the *idea* of selling drugs" and that "appellant admitted as much at oral argument." See infra at 15 (emphasis in original). Despite this, the dissent maintains that the trial court erred in refusing the proposed instruction because, in the dissent's view, it is immaterial that appellant initiated the idea to sell drugs. Rather, the dissent contends that the availability of the entrapment defense turns "on who originated the intent to commit the criminal act." See infra, at 14.

In the scenario before us, we see no meaningful distinction between originating the idea to commit the criminal act and originating the intent to commit that same criminal act. Appellant's announcing to the detectives his plan to sell drugs demonstrates that he already had formed the intent to sell drugs. Even assuming that there is a meaningful distinction to be drawn in this context between idea and intent, that distinction would not entitle appellant to the instruction he sought.

That instruction, which tracks the model instruction on entrapment, see Virginia Model Jury Instructions No. 52.400, expressly frames the origination element in terms of the criminal idea. It provides, among other things, that the evidence must establish "[t]hat an officer of the law, directly or through his agents, originated in the mind of the defendant the *idea* to commit the crime[.]" (Emphasis added). The dissent concedes that the evidence viewed in the proper light establishes that "appellant originated the *idea* of selling drugs," see infra, at 15, which necessarily means that the evidence did not support an element of the proposed instruction.

- 12 -

concluding that the evidence did not raise a jury question regarding the origination element and correctly refused appellant's proposed entrapment instruction.

## CONCLUSION

For the foregoing reasons, the judgment of the trial court is affirmed.[6]

Affirmed.

---

Accordingly, even under the dissent's formulation of the issue and its view of the evidence, the trial court did not err in refusing to give the entrapment instruction proposed by appellant.

[6] The trial court refused to give the entrapment instruction for two independent reasons. First, it found that there was no evidence to support the origination element of the entrapment defense. It also concluded that no evidence supported the "trickery, persuasion or fraud" element, specifically finding that there was not a "scintilla of evidence" that law enforcement engaged in "trickery, persuasion or fraud" to entice appellant to sell drugs. We do not address that basis for the trial court's refusal of the instruction because "[t]he doctrine of judicial restraint dictates that we decide cases 'on the best and narrowest grounds available.'" Commonwealth v. Swann, 290 Va. 194, 196 (2015) (quoting McGhee v. Commonwealth, 280 Va. 620, 626 n.4 (2010)). Our conclusion that no evidence supported the origination element of the entrapment defense is sufficient to resolve the appeal, and therefore, we need not and do not reach the question of whether there was sufficient evidence to create a jury question on the "trickery, persuasion or fraud" element.

Huff, J., dissenting,

Entrapment occurs when criminal conduct is the "product of 'creative activity [by the police] that implants in the mind of an otherwise innocent person the disposition to commit an offense and induce its commission.'" McCoy v. Commonwealth, 9 Va. App. 227, 231 (1989) (alteration in original) (quoting Stamper v. Commonwealth, 228 Va. 707, 715 (1985)). Thus, the availability of an entrapment defense does not depend on who first thought of the criminal act; it depends on who originated the intent to commit the criminal act.[7] Viewed in the light most favorable to appellant, there was more than a mere scintilla of evidence to support appellant's proposed jury instruction.[8] Therefore, I respectfully dissent.

Little separates my view from the majority. I agree that whether to grant a jury instruction rests within the sound discretion of the trial court and that the trial court's responsibility is to make certain that the instructions fairly cover all issues raised by the evidence. I agree that the granting of an instruction requires more than a scintilla of evidence,

---

[7] The majority suggests that there is no meaningful difference between who first thought of the criminal act and who originated the intent to commit that criminal act. However, it is commonplace to think of an action yet lack the intent to undertake that action. Take, for instance, the statement "if you want to go to the store tomorrow, I would need to stop at the bank today." The speaker first raised the action of going to a bank. But, the speaker has expressed only a conditional statement; it is not necessarily true that he has any intent to go to the bank.

[8] The majority notes that appellant's proposed entrapment instruction mirrored Virginia Model Jury Instruction ("VMJI") No. 52.400. See supra, at 12 n.5. That instruction provides, *inter alia*, that a defendant must prove "[t]hat an officer of the law, directly or through his agents, originated in the mind of the defendant the idea to commit the crime . . . ." Although not binding, the corresponding VMJI commentary supports my position: that the origination element refers to the intent to commit a criminal act, not who thought of the criminal act first. See VMJI No. 52.400, p. 52-12 ("The essence of the defense is that the defendant did not originate *the intent to commit the crime* and that, but for the intervention of the law enforcement officers, he would not have committed the crime. Thus, the defense is a function of the general rule that law enforcement officers are not permitted to generate in the mind of a person *the original intent to commit a criminal act* which the person would not commit without such inducements." (emphasis added)). Accordingly, there is nothing incongruent about appellant's proposed instruction and his argument regarding origination.

- 14 -

that the evidence is to be viewed in the light most favorable to the proponent of the instruction, and that weighing the evidence is left to the jury. Furthermore, I agree that the focus of entrapment is on *the* crime charged. See supra, at 9-10.

The fine line that separates us is whether the origination element of entrapment refers to who thought of the criminal act or who spawned the intent to commit the criminal act. The majority is correct to note that appellant originated the *idea* of selling drugs, i.e. he was the first to bring up the topic. Indeed, as the majority notes, appellant admitted as much at oral argument. However, in my view, the core principle is with whom the *intent* to sell originated – an intent that was expressly denied by appellant.

"Entrapment is the conception and planning of an offense by an officer, and his procurement of its commission by one who would not have perpetrated it except for the trickery, persuasion, or fraud of the officer." McCoy, 9 Va. App. at 231 (quoting Stamper, 228 Va. at 715); Falden v. Commonwealth, 167 Va. 549, 555-56 (1937). "The line of cleavage" determining when an entrapment defense is viable is "whether the inducement or incitement on the part of the [police] has been active or passive." Falden, 167 Va. at 556. "If active . . . the prosecution fails." Id. However, "if the criminal intent originates in the mind of the accused and the criminal offense is completed the fact that an opportunity is furnished or that the accused is aided in the commission of the crime in order to secure the evidence necessary to prosecute him therefor, constitutes no defense." Id.

Accordingly, "there is nothing improper in the use, by the police, of decoys, undercover agents, and informers to invite the exposure of willing criminals and to present an opportunity to one willing to commit a crime." Stamper, 228 Va. at 715. Such tools are not intended to "solicit the commission of the offense, but to ascertain if the defendant is engaged in unlawful business." Falden, 167 Va. at 556 (citation omitted). However, an entrapment defense is available where an

- 15 -

officer actively solicits or induces a person to commit a crime they would not otherwise undertake.  See, e.g., Ossen v. Commonwealth, 187 Va. 902, 911 (1948); Falden, 167 Va. at 555.

Thus, the crux is not who first thought of selling drugs; i.e., who originated the idea of selling drugs.  To focus on the origination of the idea of a criminal act would flip the concept of entrapment on its head in scenarios like this, where appellant expressed concern about the need to earn the drug supplier's confidence by selling drugs in order to achieve the Commonwealth's overarching objective.  It cannot be that such scenarios are outside the bounds of an entrapment defense.  Otherwise, the Commonwealth could nod in agreement, inducing a party to commit illicit drug sales in order to achieve the Commonwealth's objectives, yet evade any entrapment defense by claiming that the idea originated with the defendant because he first vocalized the possibility of selling drugs.  In such scenarios, there could be no defense of entrapment *even if the Commonwealth affirmatively told them to commit the crime*.[9]

---

[9] Take, for example, a defendant who, after being arrested for possession of narcotics, informs the police that he knows a high-level distributor.  Unprovoked by the Commonwealth, he offers to set up and surreptitiously record a controlled buy.  The Commonwealth agrees and tells the defendant to arrange the purchase.  After the controlled buy occurs, the high-level distributor is arrested for selling narcotics to the defendant.  However, the Commonwealth also arrests the defendant for possession of the narcotics he purchased in the controlled buy.  Under the majority's approach, this defendant was the one who originated the idea of the controlled buy and, therefore, could not avail him or herself of an entrapment defense as a matter of law.

The majority suggests that such a defendant could avail himself of a reasonable reliance defense grounded in due process principles.  However, such a defense requires three elements:

> 1) that [the defendant] was assured that the conduct giving rise to the conviction was lawful; 2) that the assurance was given by a "government official," i.e., "a public officer or body charged by law with responsibility for defining permissible conduct with respect to the offense at issue"; and 3) that, based on the totality of the circumstances, reliance upon the advice was reasonable and in good faith.

Davis v. Commonwealth, 68 Va. App. 725, 732 (2018) (quoting Branch v. Commonwealth, 42 Va. App. 665, 671 (2004)).  Thus, in this hypothetical, the defendant would have to prove that he or she *reasonably* relied on a police officer's assurance that purchasing and possessing narcotics

- 16 -

Instead, the crux of the matter is with whom the intent to commit the criminal act originated. The intent to commit the criminal act originates with the police officers when those officers actively induce a defendant to commit the crime he or she had no prior intent to commit. Falden, 167 Va. at 556.

Here, appellant testified that, prior to the meeting about becoming a confidential informant, he "did not intend to go out and sell drugs again." However, he told the detectives he would have to sell drugs to reintegrate and rebuild Johnny's trust; otherwise he could not set up a controlled buy with Johnny as the Commonwealth wanted. His prior attorney confirmed the "background understanding" that he would need to reintegrate. Appellant further testified that the detectives told him "to do what he needed to do" so that he could make a controlled buy of an ounce from Johnny. Only after this tacit authorization did appellant decide to sell drugs after being released on bond.

When viewed in the light most favorable to appellant, these facts support appellant's argument that the officers induced him to sell drugs in furtherance of their goals. Appellant did not intend to sell drugs upon his release. He raised the prospect of selling drugs only to inform the Commonwealth that it would be a necessary condition to him being able to set up the controlled buy that the Commonwealth wanted. In other words, appellant informed the Commonwealth that if it wanted him to set up a controlled buy with Johnny, he would have to sell drugs first. The officers tacitly approved of such action by telling him to "do what he needed to do." This is more than a mere scintilla of evidence that the officers actively induced appellant to sell drugs and, therefore, originated the criminal intent to do so.

---

was *legal*. Obviously, such a defense is unlikely to truly be available. Indeed, the majority contemplates the troubling consequence of their approach: that there may simply be no defense available to this hypothetical defendant. Supra, at 12 n.4.

Furthermore, the evidence supports his argument that he did not intend to sell drugs after release and would not have done so absent the trickery, persuasion, or fraud of the officers. Appellant testified that he had no intent to sell drugs after his release. He further testified that he believed he could do so only after the officers told him to do what he needed to do to set up the controlled buy despite knowing that selling drugs would violate his confidential informant agreement and subject him to the potential for future criminal prosecution. Thus, viewed in the light most favorable to appellant, there was more than a scintilla of evidence that appellant would not have sold drugs but for the officers' trickery, persuasion, or fraud.

Therefore, the evidence was sufficient to support his proposed entrapment instruction. Of course, the fact finder may have credited the detectives' rebuttal of these allegations and disbelieved appellant. But, where there is a "conflict in the evidence as to whether the criminal intent originated in the mind of the accused or was induced or incited by the officer, then the solution of the question should be submitted to the jury." Ossen, 187 Va. at 911 (quoting Falden, 167 Va. at 556). The jury was deprived of the opportunity to weigh the evidence appellant presented in support of his theory of defense. Therefore, I respectfully dissent.